THE STATE ex rel. MISSOURI PACIFIC RAILWAY COMPANY and BENJAMIN F. BUSH, Receiver, v. PUBLIC SERVICE COMMISSION, Appellant.

In Banc, March 5, 1918.

1. **INTERSTATE TRAIN: Inadequate Service: Power of Commission.** The Public Service Commission is vested with plenary power to compel an interstate train to stop at a certain town on the company's line, if the company is not already furnishing reasonable, proper and adequate interstate service to the town and locality.

State ex rel. v. Publ. Serv. Commission.

2. ———: ———: California. A modification by the circuit court of the order of the Public Service Commission requiring a certain interstate passenger train to stop "at California on flag either to take on or to let off passengers to or from any point on the railroad whereat said train stops as by its schedule provided" by relieving the company of the necessity to stop "except to put off passengers from St. Louis," is, after a review of the many facts in evidence, approved.

3. ———: ———: Stopping at Smaller Towns. The fact that the interstate train which the mayor asks the Public Service Commission to compel the company to stop at California stops on flag at the small towns of Berger and Morrison is of no importance in determining whether California already has adequate interstate service.

Appeal from Cole Circuit Court.—*Hon. A. W. Walker*, Judge.

Affirmed.

*Alex. Z. Patterson* and *James D. Lindsay* for appellant.

(1) It is the duty of a common carrier to give adequate local service, that is, a service equal to reasonable requirements, regard being had to the size of the place, the demand for transportation, the cost of the proposed service, and all the other facts having a bearing upon the relative convenience and necessity and the relative cost of the service. 33 Cyc. 639; State ex rel. v. Atkinson, 192 S. W. 86; Sec. 47, subdiv. 2, and Section 51, Public Service Commission Act, Laws 1913; Railroad v. Wharton, 207 U. S. 335; Railroad v. Railroad Comm., 237 U. S. 220; Railroad Comm. v. Railroad, 70 So. 645. (2) An order requiring the stopping of a train, although an interstate train in character, is not to be regarded as a direct or unauthorized regulation of interstate commerce, if the order when tested by a fair consideration of the adequacy of local facilities appears not unreasonable. Railroad Comm. v. Railroad, 203 U. S. 335; Railroad v. Ohio, 173 U. S. 285; Herndon v. Railroad, 218 U. S. 135; Railroad v. North Carolina Comm., 206 U. S. 1.

*James F. Green* and *H. H. Larimore* for respondents.

(1) A railroad company must provide such train service as will meet the necessity of the general public, but the extent of its duty in this regard varies as to the exigencies of the traffic, and the manner in which it shall conduct its business, including the number and frequency of trains, rests largely in the discretion of the company. 31 Cyc. 639; People v. Railroad, 64 N. E. 788; Railroad v. People, 11 N. E. 247. (2) It is a reasonable regulation on the part of a railroad company that certain trains shall not stop at all stations, provided there are enough to serve the purpose of local travel. 33 Cyc. 640; Hutchinson v. Railroad, 52 S. E. 263. (3) When adequate facilities for local passenger traffic are otherwise provided, a state law requiring railroads to add to such service through or limited trains engaged in interstate commerce may be void, and is void when it operates as a burden on such commerce. Norfolk v. Railroad, 176 Pac. 172; Reynolds v. Railroad, 110 Pac. 668; Railroad v. Public Service Comm., 216 Fed. 252; Ohage v. Railroad, 200 Fed. 128; Railroad v. Railroad Comm., 237 U. S. 220.

FARIS, J.—This is an appeal by the Public Service Commission from a judgment rendered in the circuit court of Cole County, whereby an order made by the Public Service Commission was modified.

Upon a hearing by the Public Service Commission of a complaint filed by A. B. Cole, as mayor of the city of California, against the Missouri Pacific Railway Company, and Benjamin F. Bush, the receiver thereof, wherein a better and more adequate interstate-train service was prayed for, the Public Service Commission (hereinafter referred to as the Commission) made therein, so far as is pertinent to the points involved, the below order, to-wit:

"Now after due deliberation it is ordered: That the defendants, the Missouri Pacific Railway Company, and B. F. Bush, Receiver of the Missouri Pacific Railway

Company, be required from and after the effective date of this order and until the further order of this Commission to regularly stop their eastbound Passenger Train No. 2 at California, Missouri, and to stop their westbound Passenger Train No. 5 at California, Missouri, on flag; that is, to take on passengers for points beyond California, Missouri, where stops are made by said.trains, or to let off passengers boarding said trains at other points at which such trains stop.''

Upon the hearing before the Commission, the defendants therein, who are the relators here (and are hereinafter for brevity so styled), in effect conceded in their testimony the justness of the order of the Commission, as to the stop thereby required to be made at California by relators' eastbound Passenger Train No. 2, and in the exceptions which relators filed to the finding and order of the Commission no complaint is made of such part of said order as refers to Train No. 2.

Upon the entering by the Commission of the order above recited, and following the conventional procedure in that behalf, defendants sued out a writ of *certiorari* in the circuit court of Cole County; wherein, the regular judge of said court having disqualified himself, Judge A. W. Walker, of the Ninth Circuit, was called in and sat upon the trial as special judge, and on a hearing therein *de novo* rendered the below judgment, to-wit:

''Now at this day this cause comes on for final determination and the court finds that the order of the Public Service Commission is lawful and reasonable in all respects except that portion requiring Train No. 5 to stop on flag to take on passengers for points beyond California, Missouri, where stops are made by said trains at other points at which such trains stop as set forth in the latter part of paragraph 1, and that said portion of said order is unreasonable in requiring said train to stop except on flag or request for passengers from St. Louis to California, Missouri, as set forth in plaintiff's motion to modify.

"It is therefore ordered and adjudged that this cause be reversed and remanded to the Public Service Commission for further consideration."

From this judgment the Commission, after the usual motions and procedure, has appealed. The evidentiary facts, since they are in our view decisive of all of the questions involved herein, will be found in the discussion of the law, which we think ought to apply to the case.

This case turns wholly upon the facts. For the law, so far at least as concerns its general terms, is well-settled. The rule in such cases has been repeatedly stated; never more clearly and carefully per-

Interstate Train.

haps, certainly never more authoritatively, than by the Supreme Court of the United States in the case of Mississippi Railroad Comm. v. Illinois Central Railroad, 203 U. S. l. c. 344, where it was said:

"Upon the principles decided in these cases, a state railroad commission has the right, under a state statute, so far as railroads are concerned, to compel a company to stop its trains under the circumstances already referred to, and it may order the stoppage of such trains if the company does not otherwise furnish proper and adequate accommodation to a particular locality, and in such cases the order may embrace a through interstate train actually running and compel it to stop at a locality named. In such case, in the absence of Congressional legislation covering the subject, there is no illegal or improper interference with the interstate commerce right; but if the company has furnished all such proper and reasonable accommodation to the locality as fairly may be demanded, taking into consideration the fact, if it be one, that the locality is a county seat, and the amount and character of the business done, then any interference with the company (either directly by statute, or by a railroad commission acting under authority of a statute) by causing its interstate trains to stop at a particular locality in the State, is an improper and illegal interference with the rights of the railroad

company, and a violation of the commerce clause of the Constitution."

The identical general rule is stated in the later case of Herndon v. Railroad, 218 U. S. 1. c. 156, as also in divers other cases decided by the Supreme Court of the United States, which is empowered to speak upon this subject the decisive and authoritative and last word. [Illinois Central Railroad Co. v. Illinois, 163 U. S. 142; Gladson v. Minnesota, 166 U. S. 427; Lake Shore & Mich. So. Ry. Co. v. Ohio, 173 U. S. 285; Cleveland, C., C. & St. L. Ry. Co. v. Illinois, 177 U. S. 514; Atlantic Coast Line v. Wharton, 207 U. S. 328; Chicago, Burlington & Quincy Ry. Co. v. Railroad Comm. of Wisconsin, 237 U. S. 220; Atlantic Coast Line v. North Carolina Corp. Comm., 206 U. S. 1; Oregon R. R. & Nav. Co. v. Fairchild, 224 U. S. 510; Railroad v. Public Service Comm., 216 Fed. 252; Ohage v. Northern Pacific Ry. Co., 200 Fed. 128.]

In the case of Chicago, Burlington & Quincy Railroad Co. v. Railroad Comm. of Wisconsin, supra, at page 226, is was said:

"In reviewing the decision we may start with certain principles as established: (1) It is competent for a State to require adequate local facilities, even to the stoppage of interstate trains or the re-arrangement of their schedules. (2) Such facilities existing—that is, the local conditions being adequately met—the obligation of the railroad is performed, and the stoppage of interstate trains becomes an improper and illegal interference with interstate commerce. (3) And this, whether the interference be directly by the Legislature or by its command through the orders of an administrative body. (4) The fact of local facilities this court may determine, such fact being necessarily involved in the determination of the Federal question whether an order concerning an interstate train does or does not directly regulate interstate commerce, by imposing an arbitrary requirement."

Applying the above rules to the conceded facts of this case we conclude that the modification ordered to

be made by the court *nisi* in the order of the Commission was a proper one and that the judgment below ought to be affirmed. This modification, as by reference to the statement of facts will more clearly appear, consisted in relieving the railroad from the necessity of having to stop its westbound train (No. 5), *except to put off passengers from St. Louis to California.* The order as made by the Commission required *the stopping of this train at California on flag either to take on or to let off passengers to or from any point on the railroad whereat said train stopped as by its schedule provided.* So that the train service furnished by relators to California as required by the order of the Commission, as that order was modified by the judgment appealed from, is graphically shown by the below schedule and time-table:

Westbound.

| Train No. | Leave St. Louis | Leave Jefferson City | Arrive California | |
|---|---|---|---|---|
| 1 | 9:00 a. m. | 12:10 p. m. | 1:06 p. m. | (Stops) |
| 3 | 10:10 p. m. | 1:50 a. m. | 2:33 a. m. | (Stops) |
| 5 | 7:10 p. m. | 10:35 p. m. | 11:10 p. m. | (Passes)* |
| 7 | 2:20 a. m. | 5:20 a. m. | 5:35 a. m. | (Passes) |
| 21 | 7:00 a. m. | 4:00 p. m. | 4:43 p. m. | (Stops) |
| 37 | ........ | 5:30 a. m. | 6:17 a. m. | (Stops) |
| 95 | ........ | 11:15 a. m. | 1:06 p. m. | (Stops) |

Eastbound.

| No. Train | Leave California | | Leave Jefferson City | Arrive St. Louis |
|---|---|---|---|---|
| 2 | 3:12 p. m. | (Stops) | 3:55 p. m. | 7:30 p. m. |
| 4 | 2:33 a. m. | (Stops) | 3:20 a. m. | 7:25 a. m. |
| 6 | 1:06 p. m. | (Stops) | 1:55 p. m. | 5:30 p. m. |
| 10 | 2:58 a. m. | (Passes) | 3:43 a. m. | 7:50 a. m. |
| 22 | 12:30 p. m. | (Stops) | 2:45 p. m. | 7:25 p. m. |
| 38 | 9:58 p. m. | (Stops) | 10:45 p. m. | ........ |
| 94 | 8:55 a. m. | (Stops) | 10:30 a. m. | ........ |

(*Stops to let off passengers from St. Louis to California. The word "Passes" signifies that the train does not stop.)

Trains 94 and 95 are local freight trains, carrying passengers. Trains No. 21 and 22 are local passenger trains, making all stops between Kansas City and St. Louis. Trains No. 37 and 38 are local trains between Kansas City and Jefferson City only, but train No. 37 connects at Jefferson City for California with Fast-Mail Train No. 7 from St. Louis.

The proof adduced upon the hearing shows that California is the county-seat of Moniteau County, which county, we judicially know, had according to the Federal census of 1910, 14,375 population. According to this same census California had in 1910 a population of 2,154, though the complaint filed and the witnesses offered gave its present population as "approximately 2500." It is located on the line of the relators' railroad 150 miles west of St. Louis, 25 miles west of Jefferson City, and 38 miles east of Sedalia. Except Kirkwood, Washington, and Jefferson City, it is (according to the Federal census) the most populous town on relators' railroad between St. Louis and Sedalia. It is situated in a prosperous agricultural county, which has a population density of a little over 34 persons per square mile. It serves as a railroad station for a number of smaller towns, situate on the north and on the south of it, among which is the town of Latham, where a sanitarium of some importance is located. The town of California has three banks, two large mills, one elevator, a wholesale saddlery, and quite a number of other large mercantile and business establishments, and as it is the county seat of Moniteau County all of the usual courts of record are held therein regularly.

In addition to relators' passenger business in and out of California, a large freight business, especially in the transportation of live stock, is done there, and since it has only the one railroad, relators get the whole of the transportation business of the town of whatever kind. From May 1, 1915, to April 30, 1916, relators sold 27,570 tickets to outgoing passengers at its California office, for which they were paid $21,931.88. During the months of March, April, and May, 1915,

there were sold at California to passengers for St. Louis, an average of 91 tickets each month. For the corresponding period in the year 1916, the average monthly sale of such tickets to St. Louis, was 85. In the same months there were sold at St. Louis to passengers for California, a monthly average of 76 tickets for the year 1915, and 72 for the year 1916. During these same months in the year 1915, there were sold at California to passengers whose destination was Jefferson City, a monthly average of 578 tickets: while for the year 1916, the monthly average of such sales was 528 tickets.

We deem it not important to set out the number of tickets sold at Jefferson City to those desiring to return to California, as it is near enough for our purpose to assume that they all got back. To go further into this inquiry would mayhap create the impression that we are judicially attaching undue credence and weight to the frivolous suggestion of counsel for relators that the arid status of California induced many parched pilgrims to turn their eyes and feet toward Jefferson City as the nearest and moistest oasis when looking toward the east. However much the suggested consideration might aid in explaining an apparent loss of business, by permitting us to attribute an obvious annual decrease in passenger traffic to the beneficent influence of increasing temperance, we can not entertain it here.

The evidence taken before the Commission showed that Train No. 5 (about whose stop west-bound, as our statement of the case foreshadows, this whole appeal turns), is an interstate mail train, which renders in part the service necessary to carry out a recently awarded Government contract for transporting the mails destined to Oklahoma and the Southwest. And in this connection it was further shown that to burden this train with a flag stop, for all passengers of the sort mentioned, would often render this train too late for its required mail connections at Kansas City, and thereby hinder and delay this mail service.

Against these contentions no countervailing proof was offered; nor any argument advanced, except that Train No. 5 stopped on flag at Berger and Morrison, which are small towns on relators' railroad situate in Franklin County and Osage County, respectively. On this contention it was shown that Train No. 5 does stop on flag at the above small villages to let off or on any passengers, or anyone who desires to take passage to or from these stations to any other station whereat by regular schedule this train stops. So it was urged that since the town of California is concededly much larger in population and of greater business importance than either Berger or Morrison, the fact of these flag stops at these smaller places is well-nigh conclusive proof of an unreasonable preference.

Such a contention has but negligible, if any, merit in it, and is manifestly of but little account as an argument. It is not one of the tests to be applied to the determination of the reasonableness or unreasonableness of the order made by the Commission. It is in probative weight practically upon a parity with the argument that since an acre of land in Saline County is worth $200, an acre of land in the Ozark Mountains must also be worth $200. In short, the argument fails to take into consideration existing conditions (other than mere local population and volume of business) of territory and total population served, the distance between neighboring stations east and west on the line; as well as others. For Berger and Morrison are undoubtedly entitled to some service. It might well be that the train *which would otherwise furnish* such requisite service could not conveniently do so on account of the necessity of making a connection with another line, or that the weight of the equipment of such train would cause a loss of time in stopping utterly incommensurate with the income produced by the stop. In other words the argument in such a comparison is of no decisive weight, because of the well-night insuperable difficulty of bringing to its consideration a parity of conditions for the comparison.

273 Mo.—41

By the order, as modified by the judgment appealed from, the daily service in west-bound traffic given to the town of California consists of four passengers trains from St. Louis. Three of these stop regularly. The other one (No. 5) stops whenever it has passengers from St. Louis to California. The schedule of one other of these trains (called No. 21 in the record) is apparently broken by a three or four-hour lay-over at Jefferson City. The daily eastbound service is rendered by four passenger trains, all of which make regular stops at California. One of these is what is called a local passenger train, making regular stops at practically all stations, but is nevertheless a through or interstate train. There is also daily each way one local freight train, which carries passengers; also each way a local passenger train which daily runs to and from Kansas City to Jefferson City, and which makes both eastbound and westbound stops at California; but, since as we gather from the record these local freight trains and intrastate passenger trains afford only local service, and the burden of the complaint here is concerning adequate through or interstate service, we need not take these freight trains or intrastate passenger trains into consideration. However, the schedule of the westbound one of these intrastate passenger trains, is arranged in such wise as to connect at Jefferson City with relators' fast-mail train (No. 7) going West, so as to permit passengers from St. Louis, and other points destined to California, to use the fast-mail train, and its Pullman service, as far as Jefferson City, and then almost without delay to use the local intrastate passenger train for the remainder of the trip.

While we agree that the Commission is vested with plenary authority to compel the relators to stop a presently operated interstate train at California, if relators are not otherwise already furnishing reasonable, proper, and adequate interstate service to that town and locality, we are yet, upon the facts, of the opinion that such reasonable, proper and adequate service will be furnished upon the order made by the Commission, as this

order was required to be modified by the judgment of the circuit court. Let that judgment be affirmed. All concur.