Vol. 277,        OCTOBER TERM, 1918.        175

State ex rel. M. K. & T. Ry. Co. v. Publ. Serv. Com.

THE STATE ex rel. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY et al., Appellants, v. PUBLIC SERVICE COMMISSION OF MISSOURI et al.

Division Two, March 4, 1919.

1. PUBLIC SERVICE COMMISSION: Regulation of Interstate Trains. The Public Service Commission is vested with plenary power under the statute to compel a railroad company to stop an interstate train at a point on its line if it is not otherwise furnishing reasonable, proper and adequate interstate service to that point and locality.

2. ———: Due Process of Law. Special proceedings applicable to a specified subject-matter and conformable to the rules requiring notice and the acquisition of jurisdiction, which affect all persons alike whose property or rights come within the lawful scope of the proceedings, are prosecuted with due process of law. Therefore where the statutes contemplate proceedings before the Public Service Commission and require notice to a railroad company, against whose train service complaint has been made, and an opportunity to be heard, and provide for a judicial review by the courts of the Commission's orders, and the proceedings throughout are conducted in accordance with these statutory requirements, the railroad company is not deprived of its property without due process of law.

3. ———: ———: Motion for Rehearing: Held Under Advisement. Section 106 of the Public Service Act demonstrates that it is not a fact that, where the Commission has delayed in the disposition of a motion for a rehearing, the railroad copmany must obey a previous order or suffer the penalties provided by Section 130 for its failure to do so, and thereby be deprived of its property without due process of law. Section 110, declaring that an application for a rehearing shall not excuse a corporation from complying with and obeying an order of the Commission or stay its enforcement, must be read in connection with said Section 106, which provides for a suspension of the order by the circuit court upon the presentation of a meritorious application.

4. ———: ———: Pecuniary Loss. The facts of this case fail to show that the railroad company, which was required by the Commission's order to stop designated trains at a named station, could operate the trains only at a loss, and therefore fail to demonstrate that the order deprived the company of its property without due process of law.

176 SUPREME COURT OF MISSOURI,

State ex rel. M. K. & T. Ry. Co. v. Publ. Serv. Com.

5. ———: **Train Facilities: Pecuniary Loss.** An order requiring a railroad company to stop designated trains at a certain point on its line may be sustained, although a compliance with it may entail some pecuniary loss upon the company. It is the company's duty to furnish necessary facilities, an'd the fact that the furnishing of additional trains entails an incidental pecunairy loss is to be considered, but it is to be considered in connection with the nature and productiveness of its corporate business as. a whole.

6. ———: **Pleading.** Technical exactness of court. pleadings is not required in complaints filed with the Public Service Commission. It is not a court, and the statute (Sec. 27, Publ. Serv. Act) says that a substantial. compliance with its requirements 'shall be sufficient.

7. ———: **Court Procedure: Finding of Facts.** When an appeal is taken to the Supreme Court from a judgment of the circuit court affirming an order of the Public Service Commission, the case is to be construed as a suit in equity, and the Supreme Court may make its own findings of fact.

Appeal from Cole Circuit Court.—*Hon. J. G. Slate,* Judge.

AFFIRMED.

*J. W. Jamison* for appellants.

(1) "The Public Service Commission derives its power to act from the terms and intendment of the legislative enactments which create that body." State v. Pub. Serv. Com., 199 S. W. 1001; State ex rel. United Ry. Co. v. Pub. Serv. Com., 270 Mo. 429. The Commission derives its authority to order changes in train schedules or additional service solely and exclusively from Sec. 51, Laws 1913, p. 590. By said section the Commission was without authority to interfere with appellant's interstate train schedules at Pilot Grove. State ex rel. Mo. Pac. Ry. Co. v. Publ. Serv. Com., 201 S. W. 1143; Warner v. Railroad, 156 Mo. App. 523. (2) Under the evidence there was no public necessity for the stopping of appellant's through trains at Pilot Grove on flag. The stopping of said trains there would merely serve the convenience of a very few

residents and more particularly the convenience of two traveling men, resident in that city. The order was, therefore, in excess of the Commission's authority. Warner v. Railroad, 156 Mo. App. 523; Delaware, L. & W. R. Co. v. Van Santvoord, 232 Fed. 984; Gt. Northern Ry. v. Minnesota, 238 U. S. 340. (3) Inasmuch as it is conclusively shown by the evidence that defendant is carrying intrastate passengers at a loss, the order of the Commission requiring the stopping of interstate trains 9 and 10 would be the taking of the property of the carrier without due process of law, contrary to United States Constitution, Fourteenth Amendment. Miss. Railroad Commission v. Mobile & Ohio R. Co., 37 Sup. Ct. Rep. 602. (4) Under the evidence, the order of the Commission amounts to a regulation and interference with and a burden upon interstate commerce under the commerce clause of the Federal Constitution. Chicago, B. & Q. R. Co. v. Wis. Railroad Com.; 237 U. S. 220; Miss. Railroad Com. v. Ill. Central R. Co., 203 U. S. 335; Ill. Cen. R. Co. v. Miss. Railroad Com., 138 Fed. 327; C., B. & Q. Railroad v. Pub. Serv. Com., 181 S. W. 61; Illinois C. R. Co. v. Illinois, 163 U. S. 142; C., B. & Q. Railroad v. Chicago, 166 U. S. 227; Railroad v. Ohio, 173 U. S. 285; Cleveland Ry. v. Illinois, 177 U. S. 514; Atlantic Coast Line v. Wharton, 207 U. S. 328; Herndon v. C., R. I. & P. Ry., 218 U. S. 135; Oregon Railroad v. Fairchild, 224 U. S. 510; Gt. Northern Ry. v. Minn., 238 U. S. 340. (5) Secs. 110, 111 and 112 of the Public Service Act providing for a rehearing before the Commission; the court procedure for review, and for writ of review, and Sec. 130 of said law providing a penalty for a violation of the orders of the Commission, and each of said sections, are void in that they seek to deprive appellants of their property without due process of law, and deny to them the equal protection of the law in violation of Section 1 of the Fourteenth Amendment to the Constitution of the United States, by requiring immediate, unconditional compliance with

178        SUPREME COURT OF MISSOURI,

State ex rel. M. K. & T. Ry. Co. v. Publ. Serv. Com.

and obedience to mere orders of a non-judicial administrative, representative agency. Lusk v. Atkinson, 268 Mo. 109; Chicago, Milwaukee & St. Paul Ry. Co. v. Minn., 134 U. S. 418; Ex parte Young, 209 U. S. 123; Wadley Southern Ry. v. Georgia, 235 U. S. 660; Mo. Pac. Ry. Co. v. Nebraska, 217 U. S. 196. (6) The complaint in this case fails to state facts sufficient to constitute a cause of action. It was not alleged in the complaint that the existing train service was not reasonably adequate.

*Alex. Z. Patterson,* General Counsel, and *James D. Lindsey,* Assistant Counsel, for respondent, Public Service Commission.

(1) The State has the power to require adequate local facilities, even to the stoppage of interstate trains, or the rearrangement of their schedules. (a) Appellants' first contention is that the Commission has no power under the act creating it and under the facts of this case, to interfere with interstate train schedules. This question of law has been definitely and positively settled. State ex rel. Mo. Pac. Ry. Co. v. Pub. Serv. Com., 201 S. W. 1143; Chicago, Burlington & Quincy R. Co. v. Railroad Com. of Wisconsin, 237 U. S. 26. The general rule is also stated in Mississippi Railroad Com. v. Illinois Central Railroad, 203 U. S. 344, 51 L. Ed. 209; Herndon v. Railroad, 218 U. S. 156, 54 L. Ed. 970; Illinois Central Railroad Company v. Illinois, 163 U. S. 142, 41 L. Ed. 107; Gladson v. Minnesota, 166 U. S. 427, 41 L. Ed. 1064; Lake Shore Ry. Co. v. Ohio, 173 U. S. 285, 43 L. Ed. 702; Cleveland Ry. Co. v. Illinois, 177 U. S. 514, 44 L. Ed. 868; Atlantic Coast Line Co. v. Wharton, 207 U. S. 328, 52 L. Ed. 230; Atlantic Coast Line v. North Carolina Corp. Com., 206 U. S. 1, 51 L. Ed. 933, 11 Ann. Cas. 398; Oregon Railroad Co. v. Fairchild, 224 U. S. 510, 56 L. Ed. 863; Railroad v. Vant Santwood, Public Service Com. (D. C.), 216 Fed. 252; Ohage v. Northern Pacific Ry. Co., 200 Fed. 128, 118 C. C. A. 302. (b) The facts

conclusively show that the local service rendered the city of Pilot Grove, without the limited flag stop of trains Nos. 9 and 10 as ordered by the Public Service Commission, was clearly inadequate and insufficient. (2) Neither the law nor the facts support the appellants in their contention that the order of the Commission is an arbitrary and unlawful taking of property. The evidence wholly fails to show that trains Nos. 9 and 10 are being operated at a loss, or that the order will cause them to be operated at a loss. The order of this Commission requires the stopping on flag of two trains each day, a practice long followed by the railroad company voluntarily, and in no event costing it more than a few dollars a day. (3) Sections 110, 111, 112 and 130 of the Missouri Public Service Act provide for a full, adequate and prompt judicial review of an order of the Public Service Commission, and for suspension thereof during such review, and the penalties for disobedience of a Public Service Commission order are inoperative until final determination of the validity of the statute. (a) Appellants' objection to these statutes is based wholly upon a theoretical or assumed condition, which it contends might arise under the procedure authorized by the Public Service Commission Act. No showing was made or can be made under the record that the procedure in this case has operated as an actual invasion of the appellants' constitutional right to "due process of law." Burlington R. Co. v. Dey, 82 Iowa, 312, 12 L. R. A. 436; Portland Railroad Co. v. Railroad Commission of Oregon, 229 U. S. 397. The essential concomitants of statutes providing procedure for public service commissions in order that proceedings thereunder may constitute "due process of law," fully appear in the Public Service Commission Act. (b) The motion for rehearing is a necessary and vital part of the review proceeding, and during its pendency, the applicant is not subject to penalties and forfeitures for failure to obey an order of the Commission, provided the review proceeding is prosecuted in good faith.

Secs. 106, 110, Publ. Serv. Act; State ex rel. Mo. Pac. Ry. Co. v. Commission, 192 S. W. 6. (4) It is the duty of appellants to reasonably and adequately serve not only necessities, but the local convenience, of the communities through which their railroad operates. The order of the public service commission herein merely requires the performance of this duty. Such regulation may, in a proper case, require the stopping of interstate trains, though this may involve some pecuniary loss. Miss. Railway Com. v. Mobile & Ohio Railroad, 244 U. S. 391; Atlantic Coast Line v. North Car. Corp. Com., 206 U. S. 1; Mo. Pac. Ry. Co. v. Kansas, 216 U. S. 262.

WALKER, J.—This appeal seeks the review of a judgment of the circuit court of Cole County, affirming an order of the Public Service Commission.

The complaint filed with the Commission, upon which its order was based, is as follows:

"The complaint of W. A. Scott, Mayor of Pilot Grove, Cooper County, Missouri, respectfully shows that the Missouri, Kansas & Texas Railroad Company has and does refuse to stop trains Nos. 9 and 10 at this, Pilot Grove, station for any point on their system other than St. Louis on the east and Parsons, Kansas, on the south; that this city has enjoyed this train service continually and that now service to Sedalia, Boonville, New Franklin, Fayette, Higbee, Moberly and all points north, as well as McBaine, Columbia, Jefferson City, and all points on the east excepting St. Louis, may only be had on very early trains in the morning or late at night; that we now have no midday train service, much to our discomfort.

"We were granted service on trains Nos. 9 and 10 even while we had former train No. 1 and the removal of trains Nos. 9 and 10 or service from those trains is also working a hardship on Sedalia and Boonville and on the traveling public at large, and we respectfully ask that the service of trains Nos. 9 and 10 be restored to us."

A hearing upon this complaint was held before a member of the Commission at Pilot Grove. The evidence showed that the appellant railroad company had, for a considerable length of time, regularly stopped trains Nos. 9 and 10 at Pilot Grove, for the reception and discharge of passengers to and from all points; this practice was continued until August, 1917, when appellant put into effect a rule providing that train No. 9 should stop at Pilot Grove only for the discharge of passengers from St. Louis, and the reception of passengers for Sedalia and beyond; and that train No. 10 should stop only for the discharge of passengers from Parsons, Kansas, and the reception of passengers for Columbia and beyond. In pursuance of this course, these trains were compelled to make frequent stops at Pilot Grove; yet the appellant refused to carry passengers between Boonville and Pilot Grove on these trains, although stops were regularly made at Boonville and frequently at Pilot Grove. The principal passenger business at Pilot Grove was to Boonville and Sedalia; that during the months of August and September immediately preceding the hearing on the complaint, train No. 9, in thirteen days, stopped nine times at Pilot Grove; and train No. 10, in sixteen days, stopped there eleven times; that at the time of this hearing, appellant operated three trains daily between St. Louis, Mo., and Sedalia, Mo., with final destination beyond the State. The time schedules of a number of appellant's other trains were shown to demonstrate the fact that the amount of time they consumed in running from Sedalia to Pilot Grove and from the latter place to St. Louis was not appreciably different from that consumed by the two trains sought to be affected by the complaint in running between the same points. The testimony of a number of witnesses was introduced to show the inconvenience to the public at Pilot Grove on account of the manner in which the appellant ran the two trains in question.

182     SUPREME COURT OF MISSOURI,

State ex rel. M. K. & T. Ry. Co. v. Publ. Serv. Com.

The finding of the Commission, based on this testimony, was, that the principal passenger business, at the station of Pilot Grove, was to Boonville and Sedalia; that trains numbered 9 and 10 stopped at Pilot Grove for passengers from and to St. Louis and beyond, and from and to Parsons, Kansas, and beyond, and that said trains seldom passed Pilot Grove without stopping; and that the stops for the discharge and reception of Boonville and Sedalia passengers at Pilot Grove could be made without material delay or expense to the appellant.

The Commission thus defines its reasons for the ruling in this regard:

"(1)   That the appellant, after it had voluntarily stopped trains Nos. 9 and 10 at Pilot Grove for a long period of years, ceased making the stops solely for the purpose of answering the contention of complainant, that inasmuch as the trains stopped nearly all the time at Pilot Grove, it was possible, without detriment to the service, or additional delay, to permit the carriage of Boonville and Sedalia passengers thereon.

"(2)   That the Railroad Company for a long period of time, in fact, nearly ever since the inauguration of passenger train service over its line, has rendered flagstop service for Pilot Grove on certain of its fast trains. This fact in itself is strongly indicative of the necessity for these stops.

"(3) Without the flag stops of trains Nos. 9 and 10 at Pilot Grove, the city of Pilot Grove and a populous community around it has service only on two trains each way each day; trains Nos. 3 and 7 west-bound, and trains Nos. 4 and 8 east-bound; train No. 7 west-bound originates at McBaine, and the destination of train No. 8 east-bound is McBaine.

"These facts make the conditions and circumstances affecting the service complained of in this case entirely different from the conditions and circumstances in the California Case (State ex rel. Missouri Pacific v. Public Service Commission, 201 S. W. 1143). In that case,

California, having only about 400 more inhabitants than Pilot Grove, had six trains each way each day. Every passenger train operated by the Missouri Pacific through California, including its fastest through trains, stopped regularly or on flag, except one early morning train, west-bound. At Pilot Grove, under the service inaugurated by the appellant November 25th, two of the fast M. K. & T. trains passed through each way daily without stopping.''

An order was thereupon entered by the Commission requiring the appellant to regularly stop trains Numbered 9 and 10 at Pilot Grove thereafter.

A rehearing of the case was granted by the Commission and additional testimony was offered by appellant, in which it was disclosed that appellant had prepared and put in operation a new schedule, prohibiting trains Nos. 9 and 10 to stop at Pilot Grove for passengers from or to any point. A cancellation, therefore, of the Commission's order was sought by the appellant on the ground that the new schedule remedied the inadequate local service theretofore existing between Pilot Grove and Boonville, since day-light service was furnished such points on trains other than Nos. 9 and 10. The Commission found, however, from the evidence adduced, that the failure to stop trains Nos. 9 and 10 at Pilot Grove rendered the service less adequate to and from St. Louis and from points south of Parsons, Kansas. Whereupon, the order theretofore made by the Commission in regard to said trains was affirmed and a supplemental order entered as follows:

"The Commission having heretofore, on the 10th day of October, 1917, issued an order in the above entitled proceeding, and on the 22nd day of October, 1917, issued its first supplemental order in the above proceeding, and the case now being before the Commission for rehearing and upon motion to set aside and dismiss, and the Commission being fully advised in the premises, it is

184    SUPREME COURT OF MISSOURI,

State ex rel. M. K. & T. Ry. Co. v. Publ. Serv. Com.

"Ordered, 1. That section 1 of the order entered herein on October 10; 1917, be, and the same is hereby amended, so as to read as follows:

"Ordered, 1. That the defendant, the Missouri, Kansas & Texas Railway Company, and Charles E. Schaff, receiver thereof, be and it is hereby required from and after the effective date of this order to stop westbound passenger train No. 9 at Pilot Grove, Missouri, on flag, when it has passengers from St. Louis or Boonville, Missouri, destined to Pilot Grove, Missouri, or when passengers at Pilot Grove, Missouri, desire to board said train for Sedalia, Missouri.

"And that it be required to stop east-bound passenger train No. 10 at the station of Pilot Grove, Missouri, on flag, when it has passengers from Sedalia who desire to stop at Pilot Grove, Missouri, or when passengers at Pilot Grove, Missouri, desire to board said train for Boonville or St. Louis, Missouri.

"Ordered, 2. That defendants' motion for rehearing filed herein on November 9, 1917, be, and the same is hereby overruled.

"Ordered, 3. That defendants' motion filed herein on December 17, 1917, asking that order entered herein on October 10, 1917, be set aside and held for naught, be, and the same is hereby overruled.

"Ordered, 4. That this order shall be in full force and effect from and after the first day of January, 1918, and that the secretary of the Commission forthwith serve upon defendants a certified copy of this order.

"Ordered, 5. That the defendants shall, on or before the effective date of this order, notify the Commission in the manner required by Section 25 of the Public Service Commission Law, whether the terms of this order will be accepted and complied with."

It is with the foregoing order that we are concerned in determining the propriety of the Commission's action.

I. That the Public Service Commission derives whatever authority it possesses from the law of its

creation, there can be no question (State ex
**Interstate Train.** rel. v. Public Service Commission, 109 S. W.
l. c. 1001; State ex rel. United Ry. Co. v.
Pub. Serv. Com., 270 Mo. 429).

This act, so far as applicable to the matter at issue,
provides: ''If, in the judgment of the Commission, any
railroad corporation or street railroad corporation does
not run trains enough or cars enough or possess or
operate motive power enough reasonably to accommo-
date the traffic, passenger and freight, transported by
or offered for transportation to it, or does not run its
trains or cars with sufficient frequency or at reasonable
or proper time having regard to safety, or does not
run any train or trains, cars or cars, upon a reasonable
time schedule for the run, the Commission shall, after
a hearing, either on its own motion or after complaint,
have power to make an order directing any such rail-
road corporation or street railroad corporation to in-
crease the number of its trains or of its cars or its
motive power or to change the time for starting its
trains or cars or to change the time schedule for the
run of any train or car or make any other suitable
order that the Commission may determine reasonably
necessary to accommodate and transport the traffic,
passenger or freight, transported or offered for trans-
portation.'' [Sec. 51, p. 590, Laws 1913.]

It is contended by appellant that this statute has no
application to the case at bar, on the ground that the
facts show that appellant was furnishing Pilot Grove
and vicinity adequate service by other trains than those
in controversy; and the latter being interstate trains,
should not have been subjected to the Commission's
order, and hence the latter was improper and unauthor-
ized.

A review of the testimony is confirmatory of the
soundness of the reasons of the Commission, above set
forth, for entering the order herein. Our recent ruling,
therefore, in State ex rel. Railroad v. Pub. Serv. Com.,
201 S. W. 1143, is apposite and controlling, that the

186    SUPREME COURT OF MISSOURI,

State ex rel. M. K. & T. Ry. Co. v. Publ. Serv. Com.

Commission is vested with plenary power under the statute to compel a railroad company to stop an interstate train at a point on its line, if it is not otherwise furnishing reasonable, proper, and adequate interstate service to that point and locality.

This conclusion finds support in C. B. & Q. Ry. Co. v. Wisconsin Railroad Com., 237 U. S. l. c. 226, in which that court, in ruling upon a like question to that here at issue, held: "In reviewing the decision we may start with certain principles as established: (1) It is competent for a state to require adequate local facilities even to the stoppage of interstate trains or the rearrangement of their schedules. (2) Such facilities existing—that is, the local conditions being adequately met—the obligation of the railroad is performed, and the stoppage of interstate trains becomes an improper and illegal interference with interstate commerce. (3) And this, whether the interference be directly by the Legislature or by its command through the orders of an administrative body. (4) The fact of local facilities this court may determine, such fact being necessarily involved in the determination of the Federal question whether an order concerning an interstate train does or does not directly regulate interstate commerce, by imposing an arbitrary requirement."

Numerous other cases, decisive of the Commission's power in this regard, are cited in respondent's brief, and therefore, need not be set out here. We overrule this contention.

II. It is contended that the Commission's order compels the appellant to operate the trains **Due Process of Law.** in question at a loss, and hence deprives the appellant of its property without due process of law.

That the application of the doctrine here invoked is not confined to law and chancery actions, has been definitely determined by the Supreme Court of the United States in Portland Ry. Co. v. Railroad Com.

of Oregon, 229 U. S. 397, in which it was held in effect, that special proceedings applicable to a specified subject-matter and conformable to the rules requiring notice and the acquisition of jurisdiction, which affect all persons alike whose property or rights come within the lawful scope of the proceedings, are prosecuted with "due process of law," and therefore where the proceedings before a commission contemplate notice to the railroad companies giving them an opportunity to be heard, and provide for a judicial review by the courts of the orders of the Commission, the railroads cannot complain. [See, also, Burlington C. R. & N. Co. v. Day, 82 Iowa, 312, 12 L. R. A. 436, 4 R. C. L. p. 624.]

The Public Service Act provides ample procedure to enable the Commission to proceed with due process of law in a case of this character in conformity with the rulings of the U. S. Supreme Court.

To illustrate: Section 107, of the Public Service Act, requires adequate notice of complaint and of prospective hearings, to corporations or persons against whom complaints have been lodged. Sections 110, 111, 112 and 113 of said act provide for a full and complete judicial review of the Commission's orders. There is no complaint that the proceedings at bar were not conducted in accordance with the formal requirements of these statutes; but it is especially urged by appellant that certain provisions of Section 110 authorize the Commission to hold a motion for rehearing under advisement for an indefinite length of time, thus rendering it possible for appellants' business and property to be damaged without remedy in violation of its constitutional rights. The particular portion of Section 110 to which this objection is urged is as follows: "An application for such a rehearing shall not excuse any corporation or person or public utility from complying with or obeying any order or decision or any requirement of an order or decision of the Commission, or operate in any manner to stay or postpone the enforce-

ment thereof, except as the Commission may by order direct.''

The burden of appellants' claim in this behalf is that if indefinite delay occurs in the disposition of a motion for a rehearing, appellant must nevertheless obey the orders of the Commission or suffer the severe penalties provided by Section 130 of the act for its failure so to do. The explicit terms of Section 106 of the act show clearly that appellants' claim is not tenable. The pertinent portion of said section is as follows:

''An action to recover a penalty or forfeiture . . . may be brought. . . . In any such action . . . if the defendant in such action shall prove that during any portion of the time for which it is sought to recover penalties or forfeitures for the violation of an order or decision of the Commission, the defendant was actually and in good faith prosecuting a suit to review such order and decision in the manner as provided in this act, the court shall remit the penalties or forfeitures incurred during the pendency of such proceedings.'' The filing of a motion for rehearing in a case of this character sustains a like relation to that of a motion for a new trial in an ordinary action in the circuit court. During the pendency of the motion for a rehearing, the applicant is not subject to penalties and forfeitures for failure to obey an order of the Commission, provided the proceeding for a review of its action is prosecuted in good faith. That the filing of a motion for a rehearing before the Commission is an essential part of a proceeding for review is demonstrated by the following provisions of Section 110 of the act:

''(a)    That no review proceeding shall accrue in any court unless the aggrieved party shall have filed, before the effective date of the order of the Commission complained of, an application to the Commission for a rehearing, and

"(b)   Such application must provide specifically the ground or grounds on which the applicant considers the order of the Commission unlawful, unjust or unreasonable, and further,

"(c)   No corporation, person or public utility is permitted to urge in any court any ground not set forth in said application."

Judicial approval of these provisions has been given in State ex rel. Mo. Pac. Ry. Co. v. Pub. Serv. Com., 192 S. W. 86. Thus it will be seen that ample opportunity is given the applicant for a review of the Commission's order, which is stayed and suspended until determined, for no penalty or forfeiture may be collected for a non-compliance with same. If the section complained of (110) stood alone, some ground for the contention would exist; but construed in connection with Section 106, it is not subject to the criticism leveled against it, under the general rule that the two sections are so related that they must be read together, and considered *in pari materia*. While the way is therefore open for a review by the circuit court of the Commission's proceedings like opportunity is offered for the securing of a suspending order as in any other case, provided the circuit court finds the application in that behalf meritorious.

Aside, however, from this technical contention, as to a lack of due process of law, under the terms of the act, do the facts offer any support of this contention? The only material testimony offered in this regard was that of the appellant's assistant passenger agent, who testified that certain trains, some four or five in number, but not the particular trains in controversy, were earning at various periods, amounts per train-mile, of forty to seventy-three cents; that these earnings were not sufficient to cover the transportation costs of these trains, and that the information he possessed and was testifying to was obtained from the appellant's accounting department. He did not testify, however, in what manner, or to what extent, the stopping of trains Nos,

9 and 10 on flag, as required by the Commission's order, would add to the loss claimed to have been incurred in the running of the other trains. There is, therefore, in our opinion no sufficient testimony to show that a compliance with the order of the Commission will result in financial loss in the operation of trains Nos. 9 and 10. The lack of merit of the appellant's contention, and that it has in no wise been subjected to liabilities, penalties or forfeitures, as it contends, is further shown by the record of the proceedings in this case. Supplemental order No. 2, upon which the appellant's contention must be based (Sec. 110, Pub. Serv. Act; State ex rel. Railroad v. Pub. Serv. Com., 192 S. W. 86), was entered on December 18, 1917, to become operative January 1, 1918. On December 31, 1917, appellant filed its motion for rehearing. It was overruled by the Commission on January 26, 1918. It is stated by respondent and not questioned by the appellant that the latter did not comply with the order of the Commission during the pendency of said motion, and as a matter of fact, had not done so at the time this appeal was perfected and the case submitted for our consideration.

We have reviewed the cases cited by the appellant in support of this contention, and find that the opinions therein were rendered in construing statutes unlike the Missouri Public Service Act, and were applied to facts, in many instances not parallel with those at bar. Hence, the conclusion deduced by appellant from these rulings is inapplicable in the determination of the matter here at issue.

III. That the order, such as has been made herein, may, under the facts, be sustained although it may entail some pecuniary loss, has been more than once determined by the Supreme Court of the United States, in cases sufficiently similar in subject-matter to that

Loss.    at bar, to justify their citation as authorities here. To illustrate: In Miss. Railroad Com. v. M. & O. Railroad Co., 244 U. S. l. c. 390, it was held

that "the principles of law applicable to the decision of such a case as this record presents are few and they have become so settled and so familiar by repeated decisions of this court that extended discussion of them would be superfluous. They, are these: 'A state may regulate the conduct of railways within its borders, either directly or through a body charged with the duty and invested with powers requisite to accomplish such regulation' . . . 'Under this power of regulation a state may require carriers to provide reasonable and adequate facilities to serve not only the local necessities but the local convenience of the communities to which they are directly tributary. . . . And such regulation may extend in a proper case to requiring the running of trains in addition to those provided by the carrier, even where this may. involve some pecuniary loss.' "

In an earlier case of Mo. Pac. Ry. Co. v. Kansas, 216 U. S. l. c. 278, the Federal Supreme Court, in discussing this question, said:

"The difference between the exertion of the legislative power to establish rates in such a manner as to confiscate the property of the corporation by fixing them below a proper remunerative standard and an order compelling a corporation to render a service which it was essentially its duty to perform, was pointed out in Atlantic Coast Line v. N. Car. Corp. Com., 206 U. S. 1. In that case the order to operate a train for the purpose of making a local connection necessary for the public convenience was upheld, despite the fact that it was conceded that the return from the operation of such train would not be remunerative. Speaking of the distinction between the two, it was said: 'This is so (the distinction) because as the primal duty of a carrier is to furnish adequate facilities to the public, that duty may well be compelled, although by doing so as an incident, some pecuniary loss from rendering such service may result. It follows, therefore, that the mere incurring of a loss from the performance of such a duty

192        SUPREME COURT OF MISSOURI,

State ex rel. M. K. & T. Ry. Co. v. Publ. Serv. Com.

does not in and of itself necessarily give rise to the conclusion of unreasonableness, as would be the case where the whole scheme of rates was unreasonable under the doctrine of Smyth v. Ames. . . .

"'Of course, the fact that the furnishing of a necessary facility ordered may occasion an incidental pecuniary loss is an important criterion to be taken into view in determining the reasonableness of the order, but it is not the only one. As the duty to furnish necessary facilities is coterminous with the powers of the corporation, the obligation to discharge that duty must be considered in connection with the nature and productiveness of the corporate business as a whole, the character of the services required, and the public need for its performance.'"

The doctrine thus announced is applicable here because, if the testimony of appellant as to loss of earnings be given the full probative force to which its relevant portions are entitled, it is not sufficient to show such material injury to appellant, arising from a compliance with the order, as to render same invalid. As we have held, however, except upon a strained construction, this evidence has very little probative force.

IV. The technical exactness of court pleadings is not required in complaints filed before the Commission; it is not a court, but as we said in Atchison, etc. Ry. Co. v. Pub. Serv. Com., 192 S. W. 460, "a committee created by the Legislature to make findings of fact and base orders thereon, which if reasonable, may be enforced by the courts." In addition, in State ex rel. Sedalia v. Pub. Serv. Com., 204 S. W. 497, we held that the nature and purpose of the act authorized us to "view it in a kindly spirit by giving it a liberal construction." This view comprehends the procedural as well as the administrative provisions of the act. Express legislative approval of this manner of construing the act is evident from Section 127 of same, which provides that "a substantial compliance with the

**Pleading.**

requirements of this act shall be sufficient to give effect to all the rules, orders, acts and regulations of the Commission, and they shall not be declared inoperative, illegal or void for any omission of a technical nature in respect thereto. The provisions of this act shall be liberally construed with a view to the public welfare, efficient facilities and substantial justice between patrons and public utilities." [Laws 1913, p. 648.]

Our rulings in this regard are, therefore, as they should be, but an express affirmance of the legislative construction of the act embodied in this section.

The technical rules of pleading, therefore, need not be observed in proceedings before the Commission, a substantial compliance with the requirements of the act being sufficient. A rule in harmony with this conclusion has been promulgated by the Supreme Court of the United States, in Cincinnati etc. Ry. Co. v. Interstate Com. Co., 206 U. S. l. c. 150, although that body possesses more of the characteristics of a judicial nature than the Public Service Commission. There is, therefore, no merit in this contention.

V. There is no gainsaying the question that when a case reaches this court from a circuit court, affirming an order of the Public Service Commission, it must be construed as a suit in equity, and we may make our own findings of fact. This course we have approved in State ex rel. Wab. Ry. v. Pub. Serv. Com., 271 Mo. 155, and by this rule we have been guided in the review of this case.

Court Procedure.

Summarizing our findings based upon this review, in the light of the law applicable thereto, we hold, that the complaint is sufficient to authorize the invoking of the remedial powers of the Commission; that the latter is authorized to consider a case involving the running of interstate trains; that under the preponderance of the evidence there is a public necessity for the stopping of the trains in question at Pilot Grove, as prayed; that this finding does not result in such a loss of the earn-

ings, or other inconvenience or detriment to the appellant as to constitute a violation of any substantial right, whether invoked under the due-process or interstate commerce clauses of the Constitution.

In consequence of all of which, the judgment of the circuit court should be affirmed, and it is so ordered. *Faris, J.,* concurs; *Williams, P. J.,* concurs in the result, and in all except paragraph five.