## Public Utility Commissioners' Salaries

STAMBAUGH, special counsel, November 30, 1950.—
You have asked us whether the increased salaries provided by the Act of March 31, 1949, P. L. 369, 66 PS §452, can be approved by you for the five present members of the Public Utility Commission.

The Public Utility Commission was created by the Act of March 31, 1937, P. L. 160, 66 PS §452, which provided that the commission should consist of five members. The membership was classified by providing that the commissioners first appointed should serve for two, four, six, eight and ten years, respectively; and that thereafter each successor should be appointed for a term of 10 years.

The terms of the five commissioners presently in office will expire on March 31st of the years 1951, 1953, 1955, 1957 and 1959, respectively.

Section 1 of the Act of March 31, 1937, creating the commission, provided that each commissioner should receive an annual salary of $10,000, except the chairman, who should receive an annual salary of $10,500.

The Act of March 31, 1949, P. L. 369, increased the salary of the chairman to $15,000 per year and the salary of each of the other members to $14,000 per year.

The inquiry submitted by you requires a determination of the question whether a member is entitled to receive an increase of salary granted by the legislature after his appointment to office. If a member be not so entitled, it would follow that a member newly appointed after the increase would be entitled to receive the larger increased salary but the other members, each his senior in point of service, would be limited to the smaller salary provided prior to the amending Act of 1949. Each of the five commissioners is charged with the same duties and responsibilities, but the members of longest experience in the office would receive the smaller salary.

As their terms expire at different two-year intervals, such inequality would be unavoidable, and might continue for nearly all of a term of 10 years.

At the time when the Constitution of 1874 was adopted, no term of office, except those of the judges, was longer than four years.

Each of the present members is entitled to receive the larger salary unless the increase granted by the Act of 1949 is prohibited by article III, sec. 13, of the Pennsylvania Constitution of 1874, the language of which is as follows:

"No law shall extend the term of any public Officer, or increase or diminish his salary or emoluments, after his election or appointment."

Our study of this clause, in connection with other clauses relating to compensation of judges (V-18) and members of the legislature (II-8) leads us to the conclusion that article III, sec. 13, does not apply to members of the Public Utility Commission.

In the distribution of the sovereign powers of the Commonwealth it is the function of the legislature to levy taxes and provide the necessary revenues for the operations of the Government. The legislature also has the authority to appropriate and to control the expenditure of funds and to fix the compensation of officers and employes of the Commonwealth. This power is unlimited except as restrictions may be contained in the Constitution of 1874: Commonwealth ex rel. Schnader v. Liveright et al., 308 Pa. 35, 67-68 (1932) ; Leahey v. Farrell et al., 362 Pa. 52, 57 (1949).

In addition to article III, sec. 13, such restrictions are found in (A) article V, sec. 18, relating to judges, and (B) article II, sec. 8, relating to members of the legislature.

## A.

Article V, sec. 18, provides:

"The judges of the Supreme Court and the judges of the several courts of common pleas, and all other judges required to be learned in the law, shall at stated times receive for their services an adequate compensation, which shall be fixed by law, and paid by the State. . . ."

In Commonwealth ex rel. v. Mathues, 210 Pa. 372, the Supreme Court of Pennsylvania discussed specifically the scope of the phrase "public officers" in article III, sec. 13, and held that judges were not "public officers" within the meaning of those words. The court reasoned that the requirement of "adequate compensation" negatived any conclusion that a justice of the Supreme Court must serve for a term of 21 years without an increase in salary during such term. While the case before it applied to justices of the Supreme Court, the court's language included judges generally.

In the opinion, Mr. Justice Thompson said (p. 427):

". . . they [judges] are not public officers within the generic words used in the section in question. *Those words are not used as applicable to all public officers.* If it had been intended in the fundamental law to do so, doubtless exact words to accomplish that result would have been used, but when the constitution makes a distinctive provision prohibiting an increase of the compensation of certain public officers, such as members of the legislature, *it is manifest that these words were not used in a general sense* and *by no construction can they be generically applicable to the judiciary. . . .*" (Italics supplied.)

Referring to article III, sec. 13, Mr. Justice Thompson further said (p. 428):

". . . Because such is the scope of the section and because it was a limitation of legislative power in that regard, it was placed in the heart of the article on legislation and its words indicate a restriction limited to a definite class of public officers only and cannot by

construction be coupled with the judiciary article so as to make them applicable to judges."

The decision in Commonwealth v. Mathues has been cited and followed as a precedent by the Supreme Court in 14 subsequent decisions.

In Bailey v. Waters, Auditor General, et al., 308 Pa. 309 (1932), the Supreme Court affirmed on the opinion of the late President Judge Hargest, in which the latter said (pp. 311-12):

"It is conceded, as indeed it must be, since the decision of the case of Com. v. Mathues, 210 Pa. 372, that section 13 of article III of the Constitution which provides that 'no law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment', does not apply to judges. . . ."

### B.

Article II, sec. 8, relating to members of the legislature, provides:

"The members of the General Assembly shall receive such salary and mileage for regular and special sessions as shall be fixed by law, and no other compensation whatever, whether for service upon committee or otherwise. *No member of either House shall during the term for which he may have been elected, receive any increase of salary, or mileage, under any law passed during such term.*" (Italics supplied.)

This section of the Constitution differs from article III, sec. 13, in the following respects:

1. The term "public officers" does not appear at all in article II, sec. 8. This section 8 applies to "The members of the General Assembly".

2. Article II, sec. 8, prohibits an increase during the "term for which he may have been elected", whereas article III, sec. 13 prohibits an increase after "election or appointment". The general restriction in article III,

sec. 13, cannot apply to members of the legislature because it is inconsistent with the particular provision in article II, sec. 8.

The effect of article II, sec. 8 is to place "members of the General Assembly" in a different class from the "public officers" of article III, sec. 13, and to prescribe a different restriction on increases of salary from what is provided for "public officers" by article III, sec. 13 for such class.

These differences have been recognized by the Supreme Court.

Thus in Commonwealth ex rel. Wolfe v. Butler, 99 Pa. 535 (1882), in a dissenting opinion, Mr. Justice Trunkey, in discussing article II, sec. 8, makes this statement (p. 544), which in no way conflicts with the majority opinion:

". . . The intention is to prevent any increase of the *member's* salary and mileage, after his election, as effectually as section 13 of art. III. prohibits the increase of the salary or emoluments of any *public officer* after his election. . . ." (Italics supplied.)

In Commonwealth v. Mathues, 210 Pa. 372 (1904), speaking of the words "public officers" in article III, sec. 13, the Supreme Court said (p. 427) :

". . . but when the constitution makes a distinctive provision prohibiting an increase of the compensation of certain public officers, such as *members of the legislature*, it is manifest that these words were not used in a general sense. . . ." (Italics supplied.)

In numerous other provisions of the Pennsylvania Constitution, members of the legislature are treated as different from "public officials".

Thus section 31 of article III provides that the offense of corrupt solicitation "of members of the General Assembly or of public officers of the State" shall be defined by law and punished by fine and imprisonment.

Here the distinction is made between members of the legislature and "public officers of the State".

Section 1 of article VII provides:

"Senators and Representatives and all judicial, State and county officers shall, before entering on the duties of their respective offices . . ." take a prescribed oath. In this section senators and representatives and judicial officers are named separately from all other officers.

To summarize, a distinction is clearly made between members of the legislature and "public officers" in regard to increases of compensation, and the two classes are designated separately in numerous other provisions of the Constitution which we have quoted.

See article II, secs. 2, 5 and 7; article III, sec. 30; article VI, sec. 3.

It is clear, therefore, that the words "public officers" in article III, sec. 13, do not include all public officers of the Commonwealth, and particularly do not include members of the judiciary or members of the legislature.

Do these words include members of the Public Utility Commission?

The Act of March 31, 1937, P. L. 160, which created the Public Utility Commission, provides in section 1 that the members of the commission ". . . shall be appointed by the Governor, by and with the advice and consent of two-thirds of all the members of the Senate. . . ."

Section 4 provides that:

"The Governor, by and with the consent of two-thirds of all of the members of the Senate, may remove any commissioner for inefficiency, neglect of duty or misconduct in office. . . ."

That the Public Utility Commission performs legislative functions and that its members are agents of the legislature, was squarely ruled by the Supreme Court in Commonwealth ex rel. v. Benn, 284 Pa. 421 (1925).

This case arose under The Public Service Company Law of July 26, 1913, P. L. 1374, in which the provisions for the appointment and removal of members of the commission were substantially identical with those quoted above from the act creating the present Public Utility Commission. In the interest of exactness we quote the following provisions from the Act of 1913, article IV, sec. 2:

"This commission shall consist of seven members, who shall be appointed by the Governor, by and with the advice and consent of the Senate. . . ."

Article IV, sec. 15:

"The Governor, by and with the consent of the Senate, may remove any commissioner, or any of the counsel to the commission, for inefficiency, neglect of duty, or misconduct in office. . . ."

The point decided in this case was that the Governor did not have authority to remove a member of the commission without consent of the Senate.

The opinion was based upon the ground that the *commission was legislative* in character and that the legislature itself was the power appointing commissioners and that the *Governor* in nominating members merely *acted as agent for the legislature* and for practical convenience.

In the opinion, Chief Justice Von Moschzisker said (pp. 431, 435, 436-37):

"If the duties performed by a public service commissioner, or any considerable part of such duties, are primarily and predominantly legislative in character, in the sense of being work which the general assembly itself, as distinguished from the executive or judicial branch of the government, may (either by direct action or through others named for the purpose) alone perform, then, should the lawmakers determine to execute those particular duties through the instrumentality of others, they can either designate the latter by direct

action, or permit the Governor, or some one else, to do so on their behalf; but, in either event, *the general assembly would be none the less the appointing power.* Moreover, in providing for a practical method of selecting and dismissing its own appointees, *the general assembly could permit the Governor, or whatever agency it might select* for the purpose, to act in removing the officials thus named, and it could dictate the exclusive manner in which the removal should be made; . . .

". . . *These commissions have been judicially compared to 'committees created by the legislature' to do a certain part of its work* (see State v. P. S. Com., 277 Mo. 175, 192, 210 S. W. 386, 391), and the comparison is fully warranted, for *the services performed by public service commissions is predominantly legislative in nature.* . . .

"The above cases, to which a host of others, equally strong, might be added, demonstrate that public service commissioners must be viewed as *deputies of the general assembly to perform legislative work;* and since, in the words of our Superior Court, the commissioners are the 'representatives of the legislature and not of . . . the executive', *the legislature might,* as before said, *have named them* directly; . . . All of this delegation of authority, however, is simply for the purpose of setting up machinery by which the appointing power may practically operate, and *the legislature itself remains that power, the Governor acting only as its agent. . . .*" (Italics supplied.)

The principle of the Benn Case was reasserted in Suermann v. Hadley, 327 Pa. 190 (1937), by Chief Justice Kephart, as follows (p. 201):

"Appellants further contend that the function of the Board of Revision of Taxes is legislative in character, and that the rule of Commonwealth v. Benn, supra, should apply; if so *the legislature is the real appointive*

*power with power to remove. . . .* The Benn case held that as the General Assembly was *the actual appointive power of the Public Service Commission* it could, in delegating a share of this authority to another office, reserve the removal power to itself or limit removal by its appointive agent with its consent. The decision was based on the fact that rate-making is a *legislative matter existing under the police power*, and its exercise a legislative function. . . ." (Italics supplied.)

Members of the Public Utility Commission were designated as "deputies of the General Assembly to perform legislative work" in Commonwealth ex rel. v. Stewart, 286 Pa. 511, 517 (1926); and as "deputies of the Legislature" in Wilkes-Barre et al. v. Pennsylvania Public Utility Commission, 164 Pa. Superior Ct. 210, 219 (1949).

The same principle was established by the Supreme Court of the United States in Humphrey's Executor v. United States, 295 U. S. 602 (1935).

The Federal Trade Commission Act provided that the members of the commission should be appointed by and with the advice and consent of the Senate; and that any commissioner might be removed by the President for inefficiency, neglect of duty or malfeasance in office.

The Supreme Court of the United States held (p. 628) that the President could not remove a commissioner for any other cause than those specified because:

"The Federal Trade Commission is an administrative body created by Congress to carry into effect legislative policies embodied in the statute in accordance with the legislative standard therein prescribed, . . . In making investigations and reports thereon for the information of Congress under §6, in aid of the legislative power, it acts as a legislative agency. . . ."

These decisions establish clearly that the Public Utility Commission is a legislative agency and its members are deputies or agents of the legislature.

In view of these decisions of the Supreme Court defining the official character of a member of a public utility commission, we are of the opinion that article III, sec. 13 does not apply to increases in salary of the members of the commission, because:

1. Article III, sec. 13 does not apply to members of the legislature or to deputies or agents employed by them in carrying on the work of the legislature.

Article II of the Constitution deals with the legislative branch of the Government.

It expresses a clear intent to deal with the compensation of members independently of article III, sec. 13. The same intent, we believe, is evident as to the compensation of its deputies and agents.

Section 8 of article II provides only that "No member of either House" shall receive any increase of salary during his term. The intent obviously is to prevent the members of the legislature from increasing *their own* salaries. The restriction is limited entirely to members. There is no similar restriction as to the clerks or other officers or employes of the legislature.

The express imposition of a restriction placed upon compensation of members, by implication excludes the imposition of a similar restriction upon the compensation of agents or officers of the legislature.

Section 9 of article II directs the election by the Senate of a president pro tempore and by the House of a speaker and further provides that ". . . Each House shall choose its other officers . . .".

While section 9 confers ample authority upon each House to choose officers or other subordinate agents to aid in the work of legislation, section 9 or indeed all of article II are completely silent as to the compensation of such officers or agents or any restriction thereon. The intention undoubtedly was to place the matter of compensation within the discretion of each house of the legislature.

2. The reason underlying article III, sec. 2 does not apply to members of the Public Utility Commission.

This reason was authoritatively stated by Mr. Justice Drew in Hadley's Estate, 336 Pa. 100 (1939), as follows (p. 105):

". . . The purpose of the framers of the Constitution in placing limitations upon legislative interference with the compensation received by a public officer for the duties normally incident to the office was to eliminate political or partisan pressure upon the incumbents of office after they had been elected or appointed: 8 Deb. Pa. Const. 332, 333. . . ."

As Mr. Justice Drew pointed out, the purpose of section 13 of article III was to prevent the legislature from putting political or other pressure upon officials of other departments of the Commonwealth. It was not intended to interfere with the control of the legislature over assistants or agencies created by it to carry out its legislative policies.

In increasing the salaries of the members of the Public Utility Commission, the legislature was not trying to control or to dominate officials of another coordinate branch of the Government.

It was fixing the salaries of its own deputies or agents. It did not need to increase or decrease their salaries if it had had a purpose to control their action. The commissioners were its own creatures. The legislature had power to abolish the commission entirely or to amend the law so that the legislature had the sole power of appointment and removal of commissioners. The legislature had a much greater power over the commissioners than the power to change salaries could give to it.

In Pennsylvania Official Opinions of the Attorney General 1911-1912, page 41, under date of May 24, 1911, the late Judge William M. Hargest, then an Assistant Deputy Attorney General, rendered an opinion

that the salaries of the chief clerks of the House and of the Senate might be increased during their term of office without violating article III, sec. 13. The opinion states (p. 42):

"Even assuming that the positions of Chief Clerk of the House and Chief Clerk of the Senate are offices within the broad acceptation of that term, I am of opinion and so advise you, that they are not offices within the meaning of Article III, Section 13 of the Constitution, and that the salaries attaching thereto may be increased during the term of the incumbents of such positions."

We are accordingly of the opinion and you are advised that article III, sec. 13, does not apply to members of the Public Utility Commission and that each member is entitled to receive a salary fixed by the Act of March 31, 1949, P. L. 369, from the date of its enactment.