10    157<br>d 29 SC 475

## SNYDER *v.* WISE.

A judgment before a justice of the peace in another state, is not within the act of Congress directing the mode of authentication of the records and judicial proceedings of the courts of the several states; and if it were, a copy of the proceedings, not certified to be attested according to the form used in such state, is not evidence.

IN error from the Common Pleas of Philadelphia.

*March* 14. Assumpsit. The plaintiff gave in evidence, under objection, a copy of proceedings before a justice of the peace of Posey county, Indiana, wherein judgment was confessed by defendant. The justice certified, under his hand and seal, that this was a correct and complete copy, from his docket, of the proceedings and judgment. The clerk of the Posey Circuit Court certified that the signature was genuine, and the person signing was a justice of the peace; and the president judge attested the signature of the clerk.

CAMPBELL, J., admitted the evidence.

*Brightly*, for plaintiff in error.—These proceedings are not within the act of Congress; and if they are, they are not properly certified.

No one appeared to support the judgment.

*March* 26.   BELL, J.—The only evidence given on the trial of the cause was the certified copy of the proceedings had before James Lafferty, Esquire, a justice of the peace for Posey county, in the state of Indiana, which resulted in a judgment against the plaintiff in error.   Was this copy properly authenticated? is the sole question.   It is clear the document in question does not come within the description of those mentioned in the act of Congress of March, 1804, as "records and exemplifications of office books, which are or may be kept in any public office of any state, not appertaining to a court."   These are obviously among the public writings recognised by the common law as invested with an official character, and therefore susceptible of proof by secondary means, but which are not of the nature of judicial records or judgments. Of this kind are acts and orders of the executive of the state; the acts of the legislative bodies; the journals of either branch of the legislature; registers kept in public offices; books which contain the official proceedings of corporations, if the public at large is concerned with them; parish registers, and the like.

It has often been made the subject of discussion whether judicial proceedings had before the justices of the peace of the several states of the Union, come within the purview of the constitutional provision, and the federal statute of 1790, made to give it effect, which provides that "the records and judicial proceedings of the courts of any state shall be proved or admitted in any other court within the United States, by the attestation of the clerk and the seal of the court annexed, if there be a seal, together with the certificate of the judge, chief justice, or presiding magistrate, as the case may be, that the said attestation is in due form."   In Connecticut and Vermont, it has been said that if the justice is bound by the law of his state to keep a record of his proceedings, they are within the meaning of the act of Congress, and may be certified according to its provisions.   In Bissell *v.* Edwards, 5 Day, 363, Swift, J., in delivering the opinion of the court, thought that, under a direction to keep a record, they are to be so far regarded as courts of record as to admit of their proceedings being authenticated according to the statute, and, in answer to an obvious objection, he remarked that, for the purpose of certifying, the justice might be accepted as clerk of his own court.   The cases of Starkweather *v.* Loomis, 2 Vern. 573, and Blodget *v.* Jordan, 6 Vern. 580, contain similar intimations.   But the sounder opinion is, that the courts of justices of the peace are not courts of record.   They do not proceed according to the course of the common law, but derive

their authority wholly from statute, and must, therefore, like all other inferior tribunals, show it in every instance : 1 John Ca. 20 ; 3 John. 429 ; Mills *v.* Martin, 19 John. 33. It has accordingly been held in Massachusetts, New York, New Hampshire, Ohio, and others of the United States, that the judgments of justices of the peace are not within the meaning of the constitutional and statutory provisions I have cited : Warren *v.* Flagg, 2 Pick. 450 ; Robinson *v.* Prescott, 4 N. Hamp. 450 ; Mahurin *v.* Bickford, 6 N. Hamp. 657 ; Silver Lake Bank *v.* Harding, 5 Ohio R. 545 ; Thomas *v.* Robinson, 3 Wend. 267. In Warren *v.* Flagg, the court, speaking through C. J. Parker, determined that the judicial proceedings referred to in the acts of Congress, are generally understood to be the proceedings of courts of general jurisdiction, and not those which are merely of municipal authority ; for it is required that the copy of the record shall be certified by the clerk of the court, and that, there shall also be the certificate of the judge, chief justice, or presiding magistrate, that the attestation of the clerk is in due form. This is founded on the supposition that the court, whose proceedings are to be thus authenticated, is so constituted as to admit of such officers ; the law having wisely left the records of magistrates, who may be vested with limited judicial authority, varying in its objects and extent in every state, to be governed by the laws of the state, into which they may be introduced for the purpose of being carried into effect. The same view was taken in Thomas *v.* Robinson. There a judgment rendered by a Pennsylvania justice of peace was certified by the clerk of the County Court under the seal of the court. It was rejected, on the ground that the forum of a justice is not a court of record, and therefore, not within the meaning of the act of Congress. In Mahurin *v.* Bickford, there was a similar certificate introduced with an assertion that by the law of the state, copies of such judgments were directed to be filed in the clerk's office when the magistrate went out of office. Parker, J., thought that had this been made to appear, the certificate might, perhaps, have been sufficient. But in answer to the question how such proceedings were, generally, to be authenticated, it was said they are to be regarded as foreign judgments, and so proved, and, consequently, Congress had not prescribed the mode. According to the opinion of C. J. Parker, in Commonwealth *v.* Green, 17 Mass. R. 537, a foreign record cannot properly be exemplified, but must be proved by testimony as other facts are proved, and the same opinion seems to have been entertained by Lord Ellenborough in Collins *v.* Mathew, 5 East, 475, in respect to an Irish judgment. But the

weight of authority recognises as the usual mode of authenticating foreign laws and judgments, an exemplification under the great seal of the state; a certificate of an officer authorized by law to give a copy, which certificate must itself be authenticated; or a copy proved by a witness: Church v. Hubbart, 2 Cranch, 187; Packard v. Hill, 2 Wend. 411; Lincoln v. Ballette, 6 Wend. 475.

My researches have not led me to a knowledge of any case by which it has been determined that the judgment of a foreign justice may be proved by the statutory certificates; for, what has fallen from the Connecticut and New York courts, upon the subject, are but *dicta*, predicated upon a supposed peculiarity of the local law, which, however, must be shown to exist. It will not be presumed. So far as our books show, this precise point has never been determined in Pennsylvania, though more than once it has been incidentally presented and considered. In Kean v. Rice, 12 S. & R. 203, the proceedings, and judgment offered in evidence, were had before and rendered by two justices of the peace, under a law authorizing the interference of any two justices of the proper county. The original minutes or record were produced and proved *per testes*, with evidence that the statutory court had no seal. Under this proof, this court held the proceedings to be admissible, saying, the act of Congress did not exclude other means of proof, and, therefore, the original record of the courts of another state might be authenticated in any legal manner, other than that prescribed by Congress. And, it was added, that conceding the statute to be exclusive, it would not operate to exclude the evidence, as it did not provide a mode for authenticating proceedings of that kind. If the justices had no clerk, of which there was no proof, it would be impossible to certify such proceedings, according to the act of Congress, and it would, therefore, be a case omitted. This was very near a decision of the question, though, perhaps, not precisely so, as the evidence was, beyond doubt, rightly admitted on the first ground; for it has been held by numerous cases, and among them is our own, Baker v. Field, 2 Y. 532, that as the law of Congress has no negative words, the record of a sister state may be established by any competent proof, known to the common law. But, though not an adjudication upon the very point, Kean v. Rice exhibits the settled opinion of the court upon the very point, and ought, perhaps, in the absence of any adverse manifestation following it, be accepted as sufficient proof of the rule of evidence, as settled with us. It was followed by Welch v. Crawford, 14 S. & R. 440, which, viewing the dockets kept by justices

of the peace in this state, in pursuance of our acts of Assembly, as almost, though not quite equal to records, ranks them with public books, of which examined copies, proved by oath, are allowed as evidence. In accordance with this, is Baird *v.* Campbell, 4 W. & S. 191. As a higher rank cannot reasonably be claimed for judgments rendered by justices of other states, these determinations, especially when coupled with those before cited, must be regarded as establishing the doctrine, that the records kept by inferior magistrates, of limited judicial authority, are not within the scope of the act of 1790; but the mode of their authentication is to be "governed by the laws of the state into which it may be introduced, for the purpose of being carried into effect," or as an instrument of proof. In Pennsylvania, this is either by the production of the original record, so to call it, or by sworn copies.

But were it granted that the transcript of docket entries introduced in evidence here, fell within the circle of the congressional statute, the certificates appended are altogether deficient. It is settled by the highest judicial authority, that the attestation required by the act, must be according to the forms used in the state from which the record comes; and it must be certified to be so by the presiding judge of the proper court—the certificate of the clerk to that effect being insufficient: Drummond *v.* Magruder, 9 Cranch, 122; Craig *v.* Brown, 1 Pet. C. C. R. 352; Smith *v.* Blagge, 1 John. Ca. 238. None of these certificates contain any such assertion, and the result is, they fail as statutory modes of authentication, for the directions of the statute must be pursued: Lothrop *v.* Blake, 3 Barr, 483.

It is not pretended these certificates satisfy the exigences of any ordinary mode of authentication. It follows, the evidence ought not to have been received; and, as it furnished the only ground upon which the plaintiff below rested his case, the verdict ought to have been for the defendant.

Judgment reversed, and a <em>venire de novo</em> awarded.