# Lane *versus* Commonwealth ex rel. The Attorney General.

The governor of this commonwealth has power, alone, without the concurrence of the senate, by virtue of the provisions of art. VI. section 4 of the constitution, to remove at his pleasure, during their terms of office, recorders of cities of the first class appointed under the Act of April 18th 1878 (P. L. 26).

May 4th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas No. 3, of *Philadelphia county :* Of January Term 1883, No. 411.

Quo warranto, by the Commonwealth of Pennsylvania, at the relation of Lewis C. Cassidy, Esquire, Attorney-General, directed to David H. Lane, requiring him to show by what authority he exercised the office of recorder of Philadelphia.

The information set forth that by the Act of April 18th 1878, entitled "An act to define the term of office and enlarge the duties of recorders of cities of the first-class," it is provided that recorders of cities of the first-class shall be appointed by the governor; that by virtue of the power vested in Hon. Henry M. Hoyt, then Governor of the State of Pennsylvania, he did, by and with the advice and consent of the senate of Pennsylvania, on January 30th 1879, appoint to said office of recorder of the city of Philadelphia, one David H. Lane, and the said David H. Lane did by virtue of said appointment enter upon the duties of said office, and from that time perform and discharge the duties of said office ; that on February 1st 1883, Robert E. Pattison, then being Governor of the Commonwealth of Pennsylvania, did by virtue of the power vested in him by the Constitution and laws of the Commonwealth, remove the said David H. Lane from the said office of recorder of the city of Philadelphia, and of said removal gave him personal notice ; and that notwithstanding the premises, the said David H. Lane unlawfully intrudes himself into the said office, and usurps the

[Lane *v.* Commonwealth.]

same contrary to law. The information therefore suggested that a writ of quo warranto should issue, which was accordingly done.

The defendant pleaded that on January 30th 1879, he was nominated by His Excellency Henry M. Hoyt, Governor of the said Commonwealth, and by and with the advice and consent of two-thirds of all the members of the senate of said Commonwealth, appointed recorder, as in the said information it is suggested, for the term of ten years, pursuant to the provisions of the Act of April 18th 1878, entitled, " An Act to define the term of office, and enlarge the duties of recorders of cities of the first-class," wherein it is, inter alia, provided, " that recorders of the cities of the first-class shall be appointed by the governor, by and with the advice and consent of the senate, and shall hold their offices for the term of ten years from the date of their appointment, and until their successors shall have been duly appointed, and qualified," to fill a vacancy then existing in the said office—the right and power of filling the said vacancy was then concurrently and exclusively vested in the said governor and senate aforesaid, in the manner aforesaid ; and the said defendant was on January 30th 1879, duly qualified in all respects as required by law, to accept the said office, and by force whereof, and of his said appointment, and the laws aforesaid, he did then take, and has continuously from thenceforth, taken upon himself the exercise and enjoyment of said office of recorder, and has behaved himself well in his said office, and that by reason whereof, and of the laws of said Commonwealth and the Constitution thereof in this behalf, he is entitled to continue in his said office, and not be disturbed therein, or be removed therefrom, unless it be shown that he has been impeached by the House of Representatives of this Commonwealth, or convicted of misbehavior in the said office, or of some infamous crime, or that he has been removed therefrom by the power that appointed him, as aforesaid ; and he further said that he had not been impeached by the House of Representatives of said Commonwealth, nor convicted of misbehavior in his said office of recorder, as aforesaid, nor of any infamous crime, nor been removed by the power that appointed him. Wherefore the said defendant prayed judgment, and that the said office, liberties, and franchises, in the form aforesaid claimed by him, might be adjudged and allowed to him, and that he might be dismissed and discharged by the court in the premises.

To this plea the Commonwealth demurred, generally, on the ground that the same, and the matters therein contained, were not sufficient in law to bar her from having her aforesaid writ against the defendant ; and specially, because the asser-

[Lane *v.* Commonwealth.]

tion in the said plea filed, that the power to remove resides concurrently with the governor and senate, is not a sufficient answer to the suggestion filed.

The defendant joined in demurrer, and prayed judgment thereon, which was entered by the court in favor of the Commonwealth, FINLETTER, J., delivering the opinion. Thereupon the defendant took this writ, assigning for error the action of the court in giving judgment for the Commonwealth on the demurrer.

*Amos Briggs*, for plaintiff in error.—The only question involved is whether the governor alone has power to remove the recorder. The article of the Constitution on impeachment and removal from office provides that certain officers may be removed by " the power which shall have appointed them." What then is the power which appoints the recorder? Art. 4, section 8 of the Constitution says the governor " shall nominate" (not appoint), "and by and with the advice and consent of two-thirds of all the members of the senate appoint . . . . . such . . . . . officers of the Commonwealth," &c., among which officers the recorder is included. Before the governor can appoint he must have the advice and the consent of the senate, and if that body advises adversely, the nomination fails. This clearly shows that alone he has no power to appoint; and this fact further appears from the succeeding section of the Constitution which provides that " he shall have power to fill all vacancies which may happen in offices to which he may appoint, during the recess of the senate, by granting commissions which shall expire at the end of the next session." This language limits the appointing power of the governor in vacation to the close of the next session of the legislature, when the advice of the senate may be obtained to make the appointment valid. It follows that the appointing power is the concurrent act of the governor and the senate, and under art. 4, section 8 of the Constitution the governor alone cannot remove from office. This view is supported by the decisions : People *v.* Bissell, 49 Cal. 408 ; United States *v.* Avery, Deady's Rep. 208 ; Field *v.* People, 2 Scammon (Ill.) 107 ; People *v.* Molyneux, 1 Hand (N. Y.) 113 ; United States *v.* Guthrie. 17 Howard 284 ; Taylor *v.* Hebden, 24 Md. 202 ; Watkins *v.* Watkins, 2 Md. 354 ; Tappan *v.* Gray, 9 Paige 507 ; The People *v.* Cazneau, 20 Cal. 503 ; The People *v.* Tilton, 37 Id. 619 ; The People *v.* Carrique, 2 Hill (N. Y.) 93. The power of removal exercised by the president under a similar section of the Constitution of the United States is based upon the legislative authority of congress, in their construction of the clause : 1 Kent's Com. 309 ; Story on Const. 1537, 1538, 1542 and

1,543; Vol. 1, Abridgment of the Debates of Congress 85–108. It must logically follow that the withdrawal of such authority would destroy the power.

*Lewis C. Cassidy*, Attorney-General, for the defendant in error.—The governor, alone, is the appointing power in this case. The senate in no sense appoints, it simply gives its advice to the man who does appoint. He alone selects the person, and by his signature to the commission can furnish the only evidence of appointment. The appointing power under our Constitution is the same as that provided in the constitution of the United States; under that instrument it has always been held that the president could remove officers without the consent of the senate: Ex parte Hennen, 13 Peters 230. The appointment and removal of officers is essentially an executive act, and if the constitution had been silent on the subject the president, or as here the governor, must have had full and sole power to make all appointments. The duties of the senate are exclusively legislative, except where other power is expressly given. No power of appointment is given in any case to the senate, but is in express terms in this particular case given to the governor. Because part of the process of making the appointment requires that he shall take the advice of the senate, does not in any degree impair his power or transfer any part of it to anyone else. The reasons for giving it to the president alone will be found thoroughly considered: Pomeroy on the Constitution, 3 Ed. 431–2–3–4. See as to the same 1 Kent's Com. 287-310; 2 Story on Con. § 1541–2. "The senate has but a slight participation in the appointments to office. The president is to nominate and appoint, and the senate is called upon merely to confirm or reject the nomination:" 1 Story on Cons. § 752. The appointment is the sole act of the president: Marbury *v.* Madison, 1 Cr. 157–161. It is of the essence of executive power that it should be always capable of exercise: Stanbery's Opinion, 12 Att'y Gen'l Op. 35–40. The power of removal belongs to the president alone and this now has been maintained since the first congress: Sergeant on Con. 372–3.

Chief Justice MERCUR delivered the opinion of the court, May 23d 1883.

Article IV., section 2 of the constitution of this Commonwealth declares "the supreme executive power shall be vested in the governor." Section 8 declares he shall nominate, "and by and with the advice and consent of two thirds of all the members of the senate appoint," certain officers therein named, "and such

other officers of the Commonwealth as he is or may be authorized by the constitution, or by law to appoint."

Article VI., section 4, inter alia, provides, " that appointed officers other than judges of the courts of record, and the superintendent of public instruction, may be removed at the pleasure of the power by which they shall have been appointed."

Section 1 of the Act of 18th April 1878 declares, " Recorders of cities of the first class shall be appointed by the governor by and with the advice and consent of the senate." Under this Act the plaintiff in error was appointed recorder of the city of Philadelphia.

It will be observed that the appointment was made under a statute which departs from the language of the constitution in two respects. It omits the word " nominate " and declares the recorder shall be " appointed " by the governor by and with the advice and consent of the senate, wholly omitting the words " two thirds of all the members " thereof.

Conceding the language of this statute may not give to the governor any more controlling power relating to the appointment than if it had adopted the words of the constitution, yet it in no wise attempts to narrow that power.

The office of recorder of this city is not one of the officers named in the constitution. Article XII., section 1, declares, " all officers whose selection is not provided for in this constitution shall be elected or appointed as may be directed by law." Although the office of recorder has existed here, under various changes of powers, for nearly a century, yet the plaintiff in error holds the office in virtue of legislation enacted under the constitution of 1874. That legislation prescribes the manner in which the recorder shall be appointed. It recognizes the governor as the appointing power.

As already shown, the Constitution declares in section 8 cited, the governor shall *nominate* and he shall *appoint.* Before he completes the appointment the senate shall consent to his appointing the person whom he has named. It may prevent an appointment by the governor, but it cannot appoint. It may either consent or dissent. That is the extent of its power. There its action ends. It cannot suggest the name of another. If it dissent the governor cannot appoint the person named. If it consent he may or may not, at his option, make the appointment. If for any reason his views as to the propriety of the proposed appointment change, he may decline to make it. That option is not subject to the will of the senate. Until the governor executes the commission, the appointment is not made. Prior to that time at his mere will, he may supersede all action had in the case : Marbury *v.* Madison, 1 Cranch 137 ; Story's Con. § 1540.

[Lane *v.* Commonwealth.]

The language of section 8 of the Constitution cited, gives further evidence that the governor is recognized as the appointing power. Thus he can nominate such officers only as he is or may be authorized by the Constitution, or by law " to appoint." Again, the temporary commissions which he may grant to fill vacancies that may happen during the recess of the senate, is limited to offices to which " he may appoint." Thus, whenever and wherever the Constitution speaks of the appointing power, it recognizes it as being vested in the governor. Nowhere does it declare that the senate can appoint. The whole tenor and spirit of the Constitution, in speaking of the power of appointment, recognizes that it is lodged in the governor. He is charged with the duty " to take care that the laws be faithfully executed." The senate may not be in session for a year and a half at one time. The powers of the governor are never suspended. He is at all times duly authorized to exercise " the supreme executive power." The fact that an officer may be removed by the dilatory process of impeachment, creates no argument against the summary power of removal by the governor. Crime, imbecility or gross neglect of duty may demand that an officer shall be removed at once. The power to protect the people of the Commonwealth by prompt action is wisely given to the governor. In giving construction to the Constitution we cannot assume that he will abuse that high trust.

In considering where the power of removal is lodged, we may draw some light from the interpretation given to the Constitution of the United States. It declares the president " shall nominate and by and with the advice and consent of the senate shall appoint" officers therein named. It is silent on the question of removal of any officer, but declares the judges, both of the supreme and inferior courts, shall hold the offices during good behavior. As to other officers, congress in 1789 affirmed the right of removal to exist in the president, without any co-operation of the senate. That view was acquiesced in as the true construction of the constitution until the passage by congress of the Tenure of Office Act of 2d March 1867, which was superseded by the Act of 5th April 1869, of a modified character. Apart from this legislation, the fact that the consent of the senate was necessary to authorize the president to appoint, did not prevent him from removing the officers at his pleasure.

The constitutional right of the governor to remove from office, differs from that of the president in this: It does not rest on power implied, but on power expressly given. Hence, the cases cited by counsel for the plaintiff in error are not applicable to the present case. They were decided under former

[King v. Commonwealth.]

constitutions, in which there was no express declaration as to whom the power of removal was given. The present contention is determined by ascertaining in whom the power of appointment is vested. As we have shown, the letter and the spirit of the Constitution both unite in declaring this power to be in the governor, it necessarily follows that officers appointed by him, other than those excepted, may, in the language of the Constitution, be removed at his pleasure. It follows the learned judge committed no error in entering judgment for the Commonwealth upon the demurrer.

Judgment affirmed.