Commonwealth ex rel. Attorney General v. Benn.

*Constitutional law—Public officers—Public service commissioners—Removal—Right of governor to remove—Removal without consent of Senate—Constitution—Article VI, section 24—Acts of July 25, 1913, P. L. 1374; June 7, 1923, P. L. 498.*

1. A Public Service Commission is an administrative arm of the legislature, for the services performed by it are predominately legislative in nature.

2. The legislature has the immemorial and exclusive right to fix rates for future application and otherwise supervise public service corporations.

3. For practical purposes it was found necessary that the exercise of such functions should be vested in public service commissions, and this passing on of authority, is sanctioned as an exception to the general rule that legislative power cannot be delegated.

4. Public service commissioners are, therefore, the instruments of the legislature, and the legislature is in fact the appointing power for them, and its discretion as to how they shall be removed must be obeyed.

5. In passing the Act of July 25, 1913, P. L. 1374, creating the public service commission, the legislature desired and intended to preserve its right to appoint and discharge the commissioners as instruments of legislative service, and to this end it dictated the manner in which its designated agent, the Governor, shall exercise the powers delegated to him in these regards.

6. As the legislature is really the appointing power, it can dictate how its agent should express its pleasure in making removals.

7. The fact that the Administrative Code of June 7, 1923, P. L. 498, includes, in a manner, the Public Service Company Law, does not change the predominant character of the Public Service Commission as "an administrative arm of the legislature," or serve to make the commission any more a part of the executive department than it was before being mentioned in the code.

8. The provision in the Act of 1913 which provides that "the Governor, by and with the consent of the senate, may remove any commissioner," etc., does not conflict with article VI, section 4, of the Constitution which provides that "appointed officers, other than judges of the court......may be removed at the pleasure of the power by which they shall have been appointed," inasmuch as the legislature itself, and not the Governor, is the appointing power.

9. The provision of the Act of 1913 as to removal is exclusive and does not give the governor an alternative or additional method of procedure in removing commissioners.

10. When it is said that the governor may remove with the consent of the senate, it means that he shall not remove without such consent.

11. When a constitutional direction as to how a thing shall be done is relevant, it is exclusive and prohibitory of any other mode which the legislature may deem better or more convenient.

12. The power of a state legislature is supreme in all matters, except in so far as it may be restricted by the Constitution, therefore the power to designate its own officers, and also the right to remove them, may be defined by statute in particular instances, subject, of course, to change by subsequent legislatures.

13. The fact that the legislature may have used language somewhat similar to that which, under different circumstances, the courts have construed as vesting an exclusive right of appointment in the Governor, does not control the meaning of language used in the removal clause of the Public Service Act.

14. When used under different circumstances and with different context, the same words may express different intentions.

*Constitutional law—Statutes—Construction.*

15. A construction that invalidates an act of assembly must, under all circumstances, be rejected for one, supported by reason, which will not conflict with the Constitution.

*Public Service Commission—Not court of record.*

16. The Public Service Commission is not a "court of record" within the meaning of the Constitution of Pennsylvania.

Argued September 28, 1925. Original proceeding in the Supreme Court to test right of Governor to remove a public service commissioner without the consent of the senate. Miscellaneous Docket 1925, No. 2, in case of Commonwealth ex rel. George W. Woodruff, Attorney General, v. James S. Benn. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Demurrer to answer overruled and writ dismissed.

Proceeding in quo warranto.

An answer was filed to which the Commonwealth demurred.

*Wm. A. Schnader,* Special Deputy Attorney General, with him *George W. Woodruff,* Attorney General, for the Commonwealth.—The Governor (not the Governor and the senate acting together), is the power by which members of the Public Service Commission are appointed: Lane v. Com. ex rel., 103 Pa. 481; Seltzer v. Fertig, 237 Pa. 514.

Article VI, section 4, of the Constitution applies to the removal of all appointed state officers, except the superintendent of public instruction and judges of courts of record, regardless of their function and regardless of the department of the government with which they are connected.

For the purpose of showing the broad interpretation which has been given to the words "appointed officers" as used in article VI, section 4, of the Constitution by the appellate and lower courts of this Commonwealth, we cite the following cases designating the officers respectively held removable under article VI, section 4, of the Constitution: Houseman v. Com., 100 Pa. 222, Collector of Delinquent Taxes, Philadelphia; Lane v. Com., 103 Pa. 481, Recorder of Philadelphia; Brower v. Kantner, 190 Pa. 182, Warden and Matron of County Prison; Com. v. Sulzner, 198 Pa. 502, Treasurer of

School Board; Seltzer v. Fertig, 237 Pa. 514, Assistant Clerk of the Orphans' Court; Com. v. Hoyt, 254 Pa. 45, and Com. v. Leary, 63 Pa. Superior Ct. 434, Inspector of Weights and Measures; Com. v. Likely, 267 Pa. 310, City Clerk of Cities of the Third Class; Arthur v. Phila., 273 Pa. 419, Chief of the Bureau of City Property, Philadelphia; Ulrich v. Coaldale Borough, 53 Pa. Superior Ct. 246, Borough Solicitor; Com. v. Kelley, 2 Pa. D. & C. R. 797, Secretary of the School Board; Morgan v. Adamson, 4 Pa. D. & C. R. 77, Prison Officers; Howell v. Keeler, 5 Pa. D. & C. R. 90, Secretary of the School Board; Pottsville v. Strauch, 47 Pa. C. C. R. 246, City Engineer; Com. v. Heinze, 25 Pa. Dist. R. 21, President of the Borough Council; and Nichol v. Township Commissioners, 27 Pa. Dist. R. 217, a Township Health Board.

The legislature cannot abridge the right of the appointing power to remove at pleasure appointed officers: Houseman v. Com., 100 Pa. 222; Furmaniski v. Iwanowski, 265 Pa. 1; Com. v. Hoyt, 254 Pa. 45; Com. v. Leary, 63 Pa. Superior Ct. 434; Bowman's Case, 225 Pa. 364.

Com. v. Sutherland involved a construction of the Act of March 17, 1806, which provided that the governor should appoint the "Lazaretto physician" who should be under the direction and control of the board of health, "and may be removed from office at the request of a majority of the members of the board of health." In 1806 the Constitution of 1790 was in force and that Constitution contained no clause similar to article VI, section 4, of the Constitution of 1873. Com. v. Sutherland cannot, therefore, be regarded as an authority upon the validity of article IV, section 15, of the Public Service Company Law.

Similarly, as the Federal Constitution contains no provision similar to article VI, section 4 of our Constitution, Reagan v. United States throws no light whatever upon the subject-matter of the present controversy.

Article VI, section 4, of the Constitution does not apply to "offices either specifically designated or actually contemplated therein."

True, some of the duties of the commission are quasi-legislative and others are quasi-judicial; but the legislature which created the commission looked upon its primary function as administration; and, from that point of view, the appointing power should be conferred upon the Commonwealth's "supreme executive power" whose duty it is to "take care that the laws be faithfully executed."

A public service commissioner is not a judge of a court of record: Union Borough v. Water Co., 256 Pa. 516; Ben Avon Boro. v. Water Co., 260 Pa. 289.

*Francis Shunk Brown,* with him *John P. Kelly,* for defendant.—The method and causes of removal provided by the legislature are exclusive: Com. ex rel. v. Black, 201 Pa. 433; Com. v. Reid, 265 Pa. 328; Com. v. Sutherland, 3 S. & R. 145; Reagan v. United States, 182 U. S. 419.

Article VI, section 4, of the Pennsylvania Constitution applies only to offices either specifically designated or actually contemplated therein: Houseman v. Com., 100 Pa. 222; Seltzer v. Fertig, 237 Pa. 513; Com. ex rel. v. Hoyt, 254 Pa. 45; Com. ex rel. v. Weir, 165 Pa. 284; Bowman's Case, 225 Pa. 364; Com. v. Moir, 199 Pa. 534; Com. ex rel. v. Tice, 282 Pa. 595.

The manifest intent of the Legislature, in enacting the Public Service Company Law, was to vest the power of appointment and removal jointly in the governor and the senate: West Virginia, etc., Co. v. P. S. C., 61 Pa. Superior Ct. 555; Com. ex rel. v. Snyder, 279 Pa. 234; Mauch Chunk v. McGee, 81 Pa. 433.

A public service commissioner is "a judge of a court of record" and as such is not subject to summary dismissal by the governor: Titusville Iron Works v. Oil Co., 122 Pa. 627; Prentis v. Coast Line Co., 211 U. S.

210; West Virginia P. & P. Co. v. P. S. C., 61 Pa. Superior Ct. 555; Pottsville Water Co. v. P. S. C., 78 Pa. Superior Ct. 56.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, November 23, 1925:

Defendant, James S. Benn, was duly appointed and qualified as a member of the Public Service Commission of Pennsylvania for a term of ten years, beginning July 1, 1920; he remained at his post without interference until July 30, 1925, and claims the right to continue in discharge of its duties; on the latter day, the Governor, without making any accusations whatsoever, notified the commissioner that, acting "by virtue of the authority vested in" the chief executive of the Commonwealth under section 4 of article VI of the Constitution, he removed him from office; whereupon defendant, contending that, as to the particular place here involved, the Governor had no such power of summary dismissal, refused to recognize his action as valid in law. The next step was a writ of quo warranto issued out of the Supreme Court at the suggestion of the Attorney General, directing defendant to show by what authority he claimed to possess and exercise the office in controversy. Defendant filed an answer setting forth the facts attending his appointment and attempted removal; to this the Commonwealth demurred. Thus the matter comes on for adjudication.

Defendant contends that a member of the Public Service Commission, appointed under section 2 of article IV of the Public Service Company Law (Act of July 26, 1913, P. L. 1374, 1396), which provides that this body "shall consist of seven members, who shall be appointed by the Governor, by and with the advice and consent of the Senate," can be removed only as prescribed by section 15 of article IV of the act (p. 1401), which reads as follows: "The Governor, *by and with the consent of the Senate,* may remove any commissioner......for in-

efficiency, neglect of duty, or misconduct in office, giving him a copy of the charges against him, and affording him an opportunity to be publicly heard......in his own defense......If such commissioner shall be removed, the Governor shall file in the office of the Secretary of the Commonwealth a complete statement of all charges made against such commissioner, and his finding thereon, together with a complete record of the proceedings."*

On the other hand, the Attorney General contends that the Governor's action in summarily dismissing defendant was in strict conformity with privileges vested in the chief executive by section 8 of article IV of the Constitution of Pennsylvania, which provides that the Governor "shall nominate and, by and with the advice and consent of two-thirds of all the members of the Senate, appoint [certain officers] and such other officers of the Commonwealth as he is or may be authorized by the Constitution or by law to appoint," and by article VI, section 4, which provides that "Appointed officers, other than judges of the courts of record and the Superintendent of Public Instruction, may be removed at the pleasure of the power by which they shall have been appointed."

The Attorney General contends further, (1) that the statutory provision relied on by defendant (section 15 of article IV of the Act of 1913, supra) is not exclusive, but simply gives the Governor an alternative or additional method of procedure in removing commissioners, and (2) that, if the statutory method of removal be construed as exclusive, then it is invalid under the above constitutional provisions.

As to the method of removal set forth in the Act of 1913 not being exclusive, the Attorney General suggests that, since the phrase used is, "The Governor by and with the consent of the Senate *may* remove any commis-

---

*Forty-seven states of the Union have public service commissions, and the legislatures of forty-three of them have, like Pennsylvania, provided against removal of commissioners at the pleasure of the governor.

sioner," it is discretionary with him either to follow the course dictated in the act or to dismiss a commissioner under what the relator conceives to be an absolute right of removal conferred on the Governor by the above constitutional provisions.  To this defendant replies, the Attorney General overlooks the rule that when a constitutional direction as to how a thing shall be done is relevant, as the relator claims the present one to be, it is "exclusive and prohibitory of any other mode which the legislature may deem better or more convenient": Bowman's Case, 225 Pa. 364, 367.  In addition, the Attorney General's position is negatived by our decision in Commonwealth v. Sutherland, 3 S. & R. 145, 151, where, construing language practically similar to that used in the present statute, we stated, "When it is said that the Governor *may* remove at the request of the majority of the board, it is meant that he *shall not* remove without their consent."   Here, the language used by the legislature shows it meant the Governor should not remove without the consent of the senate; and, of course, this makes an exclusive method of removal, so far as the legislature had a right to deal with the matter.

As to the second contention, that, if the method of removal provided by the legislature is exclusive, then the act is invalid in that regard, because the Governor, as the appointing power, has an unrestricted right of removal under article VI, section 4, of the Constitution, defendant replies: (1) Since bodies like the Public Service Commission were not in the minds of the people when they voted on the Constitution, and because the place in controversy is not a constitutional office, the above-mentioned section of the organic law has no application; and (2) a commissioner, as a judge of a court of record, is protected by the very words of the section in question, quoted above.

In Cochranton Telephone Co. v. Public Service Commission, 263 Pa. 506, 508, quoting Justice STORY, we said: "Constitutions deal in general language and are

not intended to provide merely for the exigencies of a few years, but to endure through a long lapse of time." Therefore, to assert that anomalous bodies like the Public Service Commission,—organized for the purpose of carrying on administrative work strictly legislative in character, acting at times in a quasi-judicial capacity, and to some extent exercising executive functions,—were not in the minds of the people when they adopted the Constitution, does not, true though it may be, help much in the solution of the question now before us; but the fact of this non-contemplation does help us to an appreciation of the difficulties presented by the unforeseen appearance of such bodies in our governmental organization. Courts, however, are constituted for the purpose of solving just such difficulties, in order that society may exist and governments continue to operate.

Whether, as suggested by defendant, the section of the organic law, which makes appointed officers subject to removal at the pleasure of the appointing power, contemplates constitutional officers alone, in the sense of those either specially named in the Constitution itself or belonging to a general class which it evidently had in view, and whether the office of public service commissioner can be held to fall within the latter designation (the relator claiming it does and defendant contending to the contrary), also whether the Public Service Commission is a court within the meaning of the Constitution, with the effect of excepting its members from the right of summary removal by the appointing power, as claimed by defendant and denied by relator, are all interesting points; but, though we have studied and considered these propositions at large, and shall refer to them further during the course of this opinion, we shall not rest our decision on any of them, since, according to our view, a more fundamental point controls the case.

The Constitution states that "appointed officers may be removed at the pleasure of the power by which they shall have been appointed," and this provision undoubt-

edly applies to all officers within its purview, whether
they be appointed by one department of the government
or by another, and whether they do legislative, executive
or judicial work; therefore, assuming for present pur-
poses that public service commissioners are within the
above provision, the broad question on which the case
turns is, By what power was defendant appointed, by
the general assembly, by the Governor, or by the Gover-
nor and senate together?

The words employed are not that removals may be
made at the pleasure of the person or official who may
have made the appointments, in the sense of first desig-
nating the appointees, but "at the pleasure of the *power*
by which they shall have been appointed." Of course,
in many instances, perhaps in most, the language first
stated in the preceding sentence and that immediately
thereafter quoted from the Constitution could be con-
strued as synonymous, but not necessarily always so;
for example, in this court all appointments are made by
the Chief Justice, but the court is the power by which
they are made; the Chief Justice acts merely as its in-
strument in designating the appointees. Thus we may
see that the person or official who makes an appointment
to office and the power by which the appointment is made
may be quite different; which shows the significance for
present consideration of the above-quoted words, to
which we direct attention as leaving open the question of
who, in the case now before us, was the appointing
power.

If a combination of the Governor and senate must be
viewed as the appointing power, on the theory that the
legislature, by the instant statute, so ordained, the ques-
tion would arise as to how far an act creating such an
associated power could, constitutionally, control its joint
"pleasure" in removing appointees, and ex necessitate,
how far it could control the exercise of the "pleasure"
of either of the associated parties to the power. If we
must hold that the Governor alone is the appointing

power, again the word "pleasure" in the above excerpt
from the organic law has a broad significance in con-
nection with the question of the legislature's right to con-
trol in any degree his privilege of removal. But if, so
far as the particular post here involved is concerned,
the legislature itself is really the appointing power, the
Governor, for practical convenience, acting as that body's
agent in nominating appointees, then it could dictate
how its agent, the Governor, should express its pleasure
in making removals. This, at least, the legislature at-
tempted to do by the Act of 1913, and, if reasonably sus-
tainable, its effort must be upheld; all constitutional
authorities so rule. Hence, the question is presented,
Can the general assembly itself be found, on any reason-
able theory, to be the appointing power of public service
commissioners under the act before us? We shall now
take up this question, which will develop other subordi-
nate ones as we proceed with our consideration.

If the duties performed by a public service commis-
sioner, or any considerable part of such duties, are pri-
marily and predominantly legislative in character, in the
sense of being work which the general assembly itself,
as distinguished from the executive or judicial branch
of the government, may (either by direct action or
through others named for the purpose) alone perform,
then, should the lawmakers determine to execute those
particular duties through the instrumentality of others,
they can either designate the latter by direct action, or
permit the Governor, or some one else, to do so on their
behalf; but, in either event, the general assembly would
be none the less the appointing power. Moreover, in pro-
viding for a practical method of selecting and dismis-
sing its own appointees, the general assembly could
permit the Governor, or whatever agency it might select
for the purpose, to act in removing the officials thus
named, and it could dictate the exclusive manner in
which the removal should be made; for, under such cir-
cumstances, the general assembly, as the appointing

power, would have the right to provide by statute how its "pleasure" (in the language of the Constitution) should be expressed, since there is nothing in the Constitution from which it can be even plausibly argued that, if the legislature sees fit to delegate to others its power to appoint its own deputies, it is required to give to these others an uncontrolled appointive power. On the contrary, the power of a state legislature is supreme in all matters, except in so far as it may be restricted by the Constitution; therefore, it follows that the power to designate its own officers, or deputies, and also the right to remove them, may be defined by statute in particular instances, subject, of course, to change by subsequent legislatures. But the question is, Are the services performed by the Public Service Commission such as to identify the members of that body as deputies of the legislature? We shall deal with this question first by the method of exclusion, and then by examining the substance of what remains for consideration.

In some states the commissions are really organized as courts and recognized as such, but with us this is not so; and certainly our commission is not, in the words of the Constitution, a "court of record." The rulings of the commission, while entitled to general acceptance, are not of such "supereminent authority that their truth is not to be called into question," which is a test of a court of record (Bellas v. McCarty, 10 Watts 13, 24; 7 R. C. L. 975); its findings have not the conclusive quality possessed by those of a court of record,—they are merely prima facie correct: see section 5, article V, of the Public Service Company Law, Act of July 26, 1913, P. L. 1374, 1405, and section 23 of article VI, P. L. 1427; also New York & Penna. Co. v. N. Y. Cent. R. R. Co., 267 Pa. 64. 74. The commission cannot punish for contempt, nor can it, in most instances, enforce its own orders, but must call upon a court to do so: sections 3 and 4, article VI, P. L. 1421. The commission never proceeds according to the course of the common law, but derives its au-

thority wholly from statute, and, like other inferior tribunals, must show it in every instance; this, under Snyder v. Wise, 10 Pa. 157, 158, proclaims it to be not a court of record. Also, none of the commissioners are required to be learned in the law, whereas, under the Act of April 15, 1851, P. L. 648, all president judges of courts of record must be learned in the law. All of these, with many other elements which might be pointed out, show that the commission is not a court of record, though it may act judicially, in the sense that its forms of procedure are largely those used in courts of equity and at law, and, as said by the Federal Supreme Court in Spring V. W. Wks. v. Schottler, 110 U. S. 347, 354, "They [such commissions] are bound in morals and in law to exercise an honest judgment as to all matters submitted for their official determination." Of course, in making reparation awards, the commission performs what may be termed a quasi-judicial function, but here again the aid of a court must be had for enforcement of the commission's orders: see section 5 of article V of the Public Service Company Law, P. L. 1913, p. 1405. Finally, if such a commission were a court, the Supreme Court of the United States would not have said in Ohio Valley Water Co. v. Ben Avon Borough, 253 U. S. 287, when reversing our court for accepting without review the findings of the Public Service Commission of Pennsylvania, "If [one] claims confiscation of his property ......the State must provide a fair opportunity for submitting that issue to a *judicial tribunal* for determination upon its own independent judgment as to both law and facts; otherwise the order is void because in conflict with the due process clause [of the] fourteenth amendment." We conclude that the Pennsylvania commission is not a court in any true sense of the term, and cannot be identified as such.

The commission has work of an executive character to do, particularly in connection with steps preliminary to the chartering of corporations, and perhaps in several

other instances provided for in the statute; but the
fact remains that these acts of an executive character,
and likewise the judicial aspects of its service, are sub-
ordinate to its strictly legislative duties, when the work
of the commission is viewed as a whole.

In certain cases, public service commissions have been
called "administrative" bodies, and our own Act of 1913
(section one) uses that term, but this is meant in the
sense of administering the details (Honolulu R. T. & L.
Co. v. Hawaii, 211 U. S. 282, 291) necessary to carry
out the public policy announced and elaborated by the
legislature: see Fogelsville, etc., Co. v. Penna. Power
& Light Co., 271 Pa. 237, 240; Swarthmore Borough v.
Public Service Com., 277 Pa. 472, 478. The best state-
ment of the meaning of the word "administrative," as
used in connection with these commissions will be found
in Mo. So. R. R. Co. v. Public Service Commission, 279
Mo. 484, 489, 214 S. W. 379, 380, where the Supreme
Court of Missouri said that such a commission was "an
administrative arm of the legislature," and this phrase
fairly describes the real character of these bodies.

The chief, primary and predominant work of the Pub-
lic Service Commission is the determining of questions
relating to rates, and almost every other duty performed
by that body is either directly or indirectly connected
with this primary service. Originally, state legislatures
passed statutes fixing prices, or rates, to be charged by
public service companies. The courts could decide
whether a specific price charged under certain circum-
stances was reasonable, but they could not prescribe
rates for the future. The immemorial and exclusive
right of legislatures to fix rates for future application
was upheld in Munn v. Illinois, 94 U. S. 113. To meet
the demands of the great industrial age in which we are
living, the Federal Interstate Commerce Commission
arose, and also the public service commissions of the
various states of the Union; for it became generally
recognized that, for practical reasons, the legislative

functions of fixing rates and otherwise supervising pub-
lic service corporations would have to be exercised by
such bodies, and this passing on of authority was
sanctioned by the courts as an exception to the
general rule that legislative power cannot be delegated.
In Relief Elec. Light, Heat & Power Co.'s Petition, 63
Pa. Superior Ct. 1, 8, Judge KEPHART, now a Justice of
this court, said: "The power to regulate and control
[public service companies] belongs to the legislature
and by it may be delegated to a commission," citing
Railroad Commission Cases, 116 U. S. 307, 336; At-
lantic Coast L. R. R. Co. v. North Carolina Corp. Comm.,
206 U. S. 1, 19; Stanislaus County v. San Joaquin C.
& I. Co., 192 U. S. 201, 207, 208; see also Honolulu R. T.
& L. Co. v. Hawaii, 211 U. S. 282, 291. These commis-
sions have been judicially compared to "committees
created by the legislature" to do a certain part of its
work (see State v. P. S. Com., 277 Mo. 175, 192, 210
S. W. 386, 391), and the comparison is fully warranted,
for the services performed by public service commissions
is predominantly legislative in nature.

In Knoxville v. Knoxville Water Co., 212 U. S. 1, 8,
the Supreme Court of the United States said that such
work was "purely legislative in its character......
whether......exercised directly by the legislature itself
or by some subordinate or administrative body," and
that "the completed act derived its authority from the
legislature and must be regarded as an exercise of legis-
lative power." In this particular case the court was
speaking of the rate-making power delegated to a city,
but the theory would be the same whether the delegation
was to a city or to a commission.

In another case, Louisville & N. R. R. Co. v. Garrett,
231 U. S. 298, 307, 318, speaking of the functions of a
utility commission, whether they were judicial or legis-
lative, the Federal Supreme Court said: "The hearing
and determination, viewed as prerequisite to the fixing
of rates, are merely preliminary to the legislative act;

to this act the entire proceeding led, and it was this consequence which gave the proceeding distinctive character." In still another case, that court said that the order of the commission in fixing rates was "a legislative act," under "delegated authority," and had "the same force as if made by the legislature": see Grand Trunk Ry. Co. v. Indiana R. R. Comm., 221 U. S. 400, 403. The Federal Supreme Court had previously said (in Honolulu R. T. & L. Co. v. Hawaii, 211 U. S. 282, 290-91) that the power to regulate public service corporations was "a power legislative in its character," which might be "exercised directly by the legislature itself" or "be delegated to an administrative body" for "execution in detail of the legislative power of regulation." Then, in the Ben Avon Case, 253 U. S. 287, 289, the court designated such work as "legislative in character," and Mr. Justice BRANDEIS, in his dissent (p. 293), referred to the order of the Pennsylvania Commission as a "legislative order." This view of the matter is held by the courts of many of the states.

Our own Superior Court said in Scranton v. Public Service Com., 80 Pa. Superior Ct. 549, 557: "The function of rate-making is purely legislative in its character, whether it is exercised directly by the legislature itself or by some subordinate or administrative body." Again, in Phila. v. Public Serv. Comm., 84 Pa. Superior Ct. 135, 142, the same court said, "Rate making is a legislative, not a judicial function, and in doing it the commission acts as a representative of the legislature, not of the judiciary or the executive."

The above cases, to which a host of others, equally strong, might be added, demonstrate that public service commissioners must be viewed as deputies of the general assembly to perform legislative work; and since, in the words of our Superior Court, the commissioners are the "representatives of the legislature and not of......the executive," the legislature might, as before said, have named them directly; but the Governor, being "an inte-

gral part of the law-making power of the state" (Com. v. Barnett, 199 Pa. 161, 169), and being constantly at hand, whereas the legislature has long periods of recess, the latter very naturally chose him as its agent for the purpose of exercising its authority to appoint its own instruments, giving him the right to take the initiative in both nominating and removing such representatives, subject to its ultimate approval, to be expressed by a vote of the senate, which body the act before us in effect authorizes to speak for both chambers on such matters. At the same time, the general assembly dictated the manner in which the Governor might exercise the power which it conferred on him. All of this delegation of authority, however, is simply for the purpose of setting up machinery by which the appointing power may practically operate, and the legislature itself remains that power, the Governor acting only as its agent. This salient fact is the key to the situation in the present case, and, when this is kept in mind, it becomes clear that the legislation under attack is not in any sense inconsistent with the Constitution of the State; on the contrary, it presents merely a direction by the general assembly as to how delegated authority shall be exercised by a named agent.

The fact that, in asserting and providing for the exercise of its right of appointment, the legislature used language somewhat similar to that which, under different circumstances, this court had construed as vesting an exclusive right of appointment in the Governor, or other appointing power, as the case might be, does not control the meaning of such language under present conditions, and the cases cited by the relator to show that it does are all distinguishable.

In Lane v. Com., 103 Pa. 481, the principal case relied on by the relator, there was no attempt by the legislature to control the right of removal. Appellant there contended that since, under the act in question, the Governor could appoint only by and with the advice of the

senate, the latter body, on general principle, was part of the appointing power, without regard to the character of the office involved; this broad contention we negatived. The particular office in controversy in the Lane Case belonged to a branch of government separate and distinct from the legislature itself; therefore, when the latter authorized the Governor to fill the position, he was made the appointing power, and the constitutional provision as to the right of removal at the pleasure of the appointing power immediately applied. The fact that, in designating the Governor as the appointing power, the statute for that purpose used the phrase, "by and with the advice and consent of the senate," when viewed in connection with the office there involved, indicated no purpose on the part of the legislature to reserve, in any sense, the appointing power to itself, for the office with which the statute dealt was not one connected in any way with the work of the general assembly. In the case now before us for adjudication, however, the officer in question is a mere instrument of the legislature, whom, as before said, that body could, beyond any doubt, have appointed itself, without reference to the Governor, and the whole language of the parts of the Public Service Company Law providing for the appointment and dismissal of such officers shows the intention of the general assembly to assert its authority as the appointing power through the Governor, not to surrender such authority to him; else why should it have pursued the unusual course of reserving a right to join, through the action of the senate, in the removal of commissioners, and also of providing, by section 3 of article IV, that appointments made during recess periods of the senate, to fill unexpired terms, shall be subject to the approval of the senate when convened (the same as appointments for whole terms), instead of simply permitting the Governor to issue a commission to expire at the end of the next session of the senate, the usual way

(provided by the Constitution, section 8 of article IV) for offices to which the Governor may appoint?

Again, in Seltzer v. Fertig, 237 Pa. 514, the circumstances differ from the present case in that the office there in question belonged to a branch of government separate and distinct from the legislature, hence no question arose of the latter's intention to preserve its inherent powers of appointment and removal of its own deputies, and those for whom such powers were there claimed had not, as here, previously possessed them.

In Com. ex rel. v. Hoyt, 254 Pa. 45, 51, 53, the legislature created a public office of purely executive character, and authorized the county commissioners to fill it (Act of July 24, 1913, P. L. 960, 961), whereupon the constitutional provision, as to the appointing power having the right of removal at its "pleasure," attached in favor of the commissioners, notwithstanding an attempt in the act to control, or regulate, the exercise of that pleasure; and this is what the case decides. Since the duties of the post did not involve the performance of legislative work, the general assembly had no right to attempt to control the removal of an incumbent,—wherein the case differs from the one at bar.

The construction placed, in all three of the above cases, on the language now under consideration was quite correct according to the circumstances in which that language was there respectively employed; but it does not necessarily follow that when, after such construction, the legislature passed the Public Service Company Law, and used somewhat similar language therein, the lawmakers (as relator contends) adopted the meaning placed on this language in the prior cases. The circumstances in which like language was used in those cases and under which it was employed in the present act of assembly were radically different, as before pointed out; and precisely the same words, or combination of words, may have different meanings when used under varying circumstances. It is a well-known and oft-repeated

rule that, "When used under different circumstances and with different context, the same words may express different intentions": see Redding v. Rice, 171 Pa. 301, 306; Long's Est., 270 Pa. 480, 487; Kirkpatrick's Est., 280 Pa. 306, 312. Justice WHITE, afterwards Chief Justice, applies this rule in N. Y., N. H. & H. R. R. v. Interstate Com. Comm., 200 U. S. 361, 401, as a limitation on the general principle that a construction made by a tribunal charged with the enforcement of a statute which "has been impliedly sanctioned by reënactment of the statute without alteration in the particulars construed......, must be treated as read into the statute"; for he there said that, in the application of the principle just stated, the prior construction must be "restricted" to the "conditions which were passed on in the cases referred to"; or, to put it in another way, that a past construction, while applicable to all "identical cases in the future," will not control a set of circumstances which present a radical difference from the facts before the court when the original construction was adopted.

The fact that the Administrative Code (Act of June 7, 1923, P. L. 498), a statute dealing with the executive department of the government, includes, in a manner, the Public Service Company Law (see article XXVII of Act of 1923, supra, p. 635), cannot change the predominant character of the Public Service Commission as "an administrative arm of the legislature," or serve to make the commission any more a part of the executive department than it was before being mentioned in the code. As said by Judge HOOK in Western U. Tel. Co. v. Myatt, 98 Federal 335, 346, even though the legislature may denominate a tribunal as of a certain character, its real character must be "determined rather by the ascertainment of the essential nature of the jurisdiction and powers" which the tribunal exercises than by its legislative cognomen. Moreover, as pointed out in Com. v. Snyder, 279 Pa. 234, 242, the subject of the Administrative Code is the administrative duties of the executive

department of government; and, though the Public Service Company Law may, in parts, have relation to this kind of administrative work, yet by the particular paragraphs with which we are here principally concerned, namely, sections 2 and 15 of article IV of the Act of 1913, P. L. 1396, 1401 (both quoted in the second paragraph of this opinion), it recognizes public service commissioners as instruments of the general assembly. Moreover, the Act of 1913 shows that the legislature itself, so far as the final say in such matters is concerned, desired and intended to preserve its right to appoint and discharge these instruments of legislative service; and, to this end, it dictated the manner in which its agent, the Governor, should exercise the powers delegated to him in those regards. That such was the intention of the lawmakers, and is the essence of the legislation before us, cannot be doubted; and this is the reading we give to the two above-mentioned sections of the Act of 1913.

The construction of the first of these sections suggested by the relator,—that the legislature did not mean to make the chief executive its agent to coöperate with it in the exercise of its own appointing power, but intended to vest that power in the Governor,—would render the second of them (the one dealing with the general assembly's participation, through the senate, in the removal of commissioners) unconstitutional, as a forbidden interference with the "pleasure" of the appointing power. Such being the case, it is our duty to search further for a construction, and, if any other reasonable one can be found, to adopt it, thus rejecting the construction urged by the relator, which would lead to a declaration of constitutional invalidity; our duty is the same in this regard even though it be conceded that, had language similar to the words first used in the act to reserve legislative control over the appointment of commissioners (that they were to be appointed "by and with the advice and consent of the senate") been employed in connection with an office having to do with other than legisla-

tive work, and there were nothing else in the statute to warrant giving such words another meaning, they would be susceptible of the rejected construction. But here the words in question were used in connection with an office having to do with legislative work, and, as previously shown in this opinion, other parts of the act indicate the purpose with which they were employed,—to reserve legislative control of appointments; hence the construction we put upon them, which renders the subsequent section of the statute, as to the legislature's control over the removal of commissioners, constitutional.

A construction that invalidates an act must, under all circumstances, be rejected for one, supported by reason, which will not conflict with the Constitution; for a court is obliged to resolve every doubt in favor of the validity of legislation, and can never accept as correct a meaning which conflicts with the organic law if such a course can reasonably be avoided. This well-established rule was recently discussed and applied by us in sustaining the constitutional validity of the Administrative Code: Com. v. Snyder, 279 Pa. 234, 239. Now, again following it, we conclude that the general assembly has, by the legislation before us, retained its appointing power so far as public service commissioners are concerned, and that section 15 of article IV of the Public Service Company Law, as to the exclusive manner in which such officials may be removed, is constitutional. Therefore, on the present record, defendant is entitled to retain the office in controversy, and, accordingly, judgment of ouster must be refused.

The demurrer to the answer is overruled and the writ is dismissed.